[Cite as *Hinton Adult Care Facility v. Ohio Dept. of Mental Health & Addiction Servs.*, 2017-Ohio-4113.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| HINTON ADULT CARE FACILITY, et al., | : | |
| | : | |
| Appellants-Appellants, | : | |
| | : | Case No. 16CA3566 |
| v. | : | |
| | : | DECISION AND |
| OHIO DEPARTMENT OF MENTAL HEALTH | : | JUDGMENT ENTRY |
| AND ADDICTION SERVICES, | : | |
| | : | |
| Appellee-Appellee. | : | RELEASED 05/26/2017 |

APPEARANCES:

Kevin L. Shoemaker, Shoemaker Law Office, Dublin, Ohio, for appellants Hinton Adult Care Facility and Friendship Adult Care Facility.

Michael DeWine, Ohio Attorney General, and Roger Carroll, Principal Assistant Ohio Attorney General, Columbus, Ohio, for appellee Ohio Department of Mental Health and Addiction Services.

Hoover, J.

{¶ 1} In May 2015 the Ohio Department of Mental Health and Addiction Services ("ODMHAS") denied the renewal of an adult care license for Friendship Adult Care Facility ("Friendship"), and revoked the adult care license for Hinton Adult Care Facility ("Hinton"), after it determined that both facilities had overcharged their residents who participated in the Residential State Supplement ("RSS") program. The ODMHAS's decision to revoke and deny renewal of the licenses was memorialized in two separate Adjudication Orders. Friendship and Hinton appealed from the Adjudication Orders to the Ross County Common Pleas Court pursuant to R.C. 119.12. The Ross County Common Pleas Court consolidated the two cases and

affirmed the Adjudication Orders, finding that the Adjudication Orders were supported by reliable, probative, and substantial evidence and were in accordance with the laws of Ohio. On appeal to this Court, Friendship and Hinton contend that the common pleas court erred in affirming the Adjudication Orders because they were not in accordance with the law. For the reasons that follow, we conclude that the arguments raised by Friendship and Hinton are without merit. Accordingly, we affirm the judgment of the common pleas court.

## I. Facts and Procedural Posture

{¶ 2} Friendship and Hinton are adult group homes operating in Ross County, Ohio, and have residents who participate in the RSS program. Both Friendship and Hinton voluntarily agreed to take residents who were enrolled in the RSS program.

{¶ 3} On September 28, 2012, the ODMHAS sent a memorandum to all adult care facilities and their various associations, including Friendship and Hinton, reminding the facilities that the maximum monthly allowable fee for RSS participants living in an adult group home was $877. The memorandum clarified that the allowable fee was to be accepted as payment in full for accommodations, supervision, and personal care services pursuant to Ohio Administrative Code 5122-36-04 and 5122-36-05. Notably, the memorandum emphasized that the failure to adhere to this directive or other administrative code provisions could result in regulatory action.

{¶ 4} On November 23, 2012, the ODMHAS notified Friendship and Hinton again. The notification was that the facilities may be charging their RSS residents more than the allowable fee. In response, Friendship and Hinton provided the ODMHAS with their residential agreements setting forth what they were charging the RSS participants. Based upon the records provided, it was determined that Friendship had seven residents who participated in the RSS program; and contrary to the rules, these residents were being charged $1,294 a month. Furthermore, the

ODMHAS determined that Hinton was charging four RSS residents $1,294 per month, one RSS resident $1,258, one RSS resident $1,280, and one RSS resident $1,050, all in violation of the administrative rules.

{¶ 5} On September 23, 2013, the ODMHAS issued a notice to deny the renewal of Friendship's adult care license, and a notice to revoke Hinton's adult care license, based upon the investigation evidencing the overcharging of RSS residents. By agreement of the parties, the matters involving the denial of the renewal of the adult care license for Friendship and the revocation of the adult care license for Hinton were set for joint administrative hearing on April 22, 2014. An administrative hearing occurred on that date before an impartial Hearing Examiner pursuant to R.C. Chapter 119.

{¶ 6} At the administrative hearing, sworn testimony was received from Janel Pequignot, Chief of the Bureau of Licensure and Certification for the ODMHAS, and Nellie Book, owner and operator of Friendship. The testimony was transcribed by a court reporter. The ODMHAS, Friendship, and Hinton all admitted documentary exhibits into evidence. Furthermore, because the issues were the same and the witnesses were to be the same, the parties agreed that the testimony would serve as evidence in both cases.

{¶ 7} Pequignot testified that the ODMHAS licenses adult foster homes and adult care facilities for people living in RSS placements. She explained that there are two types of adult care facilities: adult group homes, which are licensed for 6-16 residents, and adult family homes, which are licensed for 3-5 residents. Friendship and Hinton are both adult group homes. Pequignot clarified that adult care facilities are not required to serve RSS participants; and if there are no RSS participants in the facility, there are no restrictions on the fee that can be charged residents. However, Pequignot testified that once a facility accepts an RSS participant as

a resident, then the facility must comply with the RSS program rules, including the maximum allowable fee which can be charged the resident.

{¶ 8} Pequignot further testified that while over 900 RSS residents in the state are being charged the correct allowable fee; 36 are not. Pequignot testified that all but five of the adult care facilities in Ohio are in compliance with the rule regarding maximum allowable fees. Two of the five non-complying facilities are Friendship and Hinton. Finally, Pequignot testified that she reviewed the RSS resident agreements at Friendship and Hinton, and she discovered that the RSS residents were being charged more than the allowable fee.

{¶ 9} Book testified that she knows the maximum allowable fee that can be charged an RSS resident is $877. Book also acknowledged that the Ohio Administrative Code states that a group home cannot accept any money from a resident or the resident's family above $877. Book testified, however, that she charged the increased rates based upon information she received at a meeting in 2009. Book explained that sometime in the fall of 2009, a resident of Friendship was informed that the Social Security Administration had overpaid her and the overpayment needed to be returned. Book then set up a meeting to explain the overpayment. According to Book, several people attended the meeting including herself, Ms. Lois Hinton (the operator of Hinton), Joyce Peck (an employee of the Social Security Office in Ross County), Becky Simon (RSS supervisor of the Department of Aging District 7), and Ted Baer (RSS case manager). According to Book, Peck stated at the meeting that a resident can only keep $30 of the money received from the Social Security Administration as a personal needs allowance. Based on this statement, Friendship and Hinton decided to keep all of the residents' Social Security and RSS money, with the exception of $50 ($30 personal needs and $20 income disregard) as payment for their living arrangements. Book acknowledged that Simon did not agree with Peck's interpretation given at

the meeting in 2009. Counsel for Friendship and Hinton also stated that Peck's statements were not being "offered for the truth of the statement [but merely] * * * to show what the effect was on the listeners, the providers. That's what we're proffering in testimony."

{¶ 10} Pequignot, however, testified that there is nothing in Ohio or federal law that limits a RSS participant's benefits to $50 a month after paying the adult group home. Rather, Pequignot testified that it would be a violation of Ohio law if the resident paid the $877 allowable fee and then also passed on all but $50 of their personal income to the group home operator. Pequignot further testified that the Social Security Administration had never informed the ODMHAS that it was improper to set a fee for an adult group home provider of $877 a month for residents who are participants in RSS program. Furthermore, Pequignot testified that the Social Security Administration had never informed the ODMHAS that it was a violation of law for an individual on SSI to keep more than $50 of monthly income.

{¶ 11} On April 7, 2015, the Hearing Examiner issued her Report and Recommendation, recommending to the Director of the ODMHAS that the renewal of Friendship's license be denied. In the Report and Recommendation, the Hearing Examiner found that Friendship was charging seven RSS residents $1,294 per month, or $417 more than was permissible under the administrative rules. The Hearing Examiner also found that sometime after the ODMHAS had issued its notice letter to Friendship to deny its renewal, its RSS residents received a $11 cost of living adjustment from Social Security, and that Friendship then raised its rent an additional $11 to $1,305. This left the RSS residents with only $50 a month for their personal needs. The Hearing Examiner also found that Friendship's CEO was aware that Ohio Administrative Code 5122-36-05 did not permit it to charge more than $877 a month. The Hearing Examiner concluded that Ohio Administrative Code 5122-36-04, 5122-36-05, and 5122-33-23 are properly

promulgated rules and have the force of law. Moreover, the Hearing Examiner recommended that the renewal of Friendship's license should be denied because by charging its RSS residents more than $877 a month it violated Ohio Administrative Code 5122-36-04 and 5122-36-05, exploited its residents in violation of Ohio Administrative Code 5122-33-23(B)(15), and violated the residents' rights to manage their own personal affairs contrary to Ohio Administrative Code 5122-33-23(B)(4). On May 19, 2015, the Director of the ODMHAS issued an Adjudication Order denying the renewal of Friendship's license. The Adjudication Order expressly adopted the Hearing Examiner's Findings of Fact and Conclusions of Law.

{¶ 12} Also on April 7, 2015, the Hearing Examiner issued her Report and Recommendation recommending to the Director of the ODMHAS that Hinton's license be revoked. In the Report and Recommendation, the Hearing Examiner found that Hinton charged seven RSS residents more than $877 per month. Specifically, the Hearing Examiner determined that Hinton charged its RSS residents between $1,050 and $1,294 per month. The Hearing Examiner concluded that Ohio Administrative Code 5122-36-04, 5122-36-05, and 5122-33-23 are properly promulgated rules and have the force of law. Moreover, the Hearing Examiner recommended that Hinton's license be revoked because it charged its RSS residents more than $877 a month in violation of Ohio Administrative Code 5122-36-04 and 5122-36-05. The Hearing Examiner also concluded that Hinton exploited its residents in violation of Ohio Administrative Code 5122-33-23(B)(15), and violated the residents' rights to manage their own personal affairs contrary to Ohio Administrative Code 5122-33-23(B)(4). On May 20, 2015, the Director of the ODMHAS issued an Adjudication Order revoking Hinton's license. The Adjudication Order expressly adopted the Hearing Examiner's Findings of Fact and Conclusions of Law.

{¶ 13} Following the issuance of the Adjudication Orders, Friendship and Hinton appealed to the common pleas court pursuant to R.C. 119.12. The common pleas court consolidated the two cases on August 17, 2015. In their appeal to the common pleas court, Friendship and Hinton argued that the Adjudication Orders were not in accordance with the law. Specifically, Friendship and Hinton questioned the rule-making authority of the ODMHAS to establish the rate adult group homes could charge its RSS residents. Furthermore, Friendship and Hinton argued that the relevant rules established by the ODMHAS conflicted with the Social Security Act.

{¶ 14} The common pleas court affirmed the Adjudication Orders by decision and judgment entry, finding that the Adjudication Orders were supported by reliable, probative, and substantial evidence and were in accordance with the law. In particular, the common pleas court determined that the administrative rules did not conflict with the Social Security Act; and that the General Assembly had granted the ODMHAS authority to promulgate the administrative rules at issue. Friendship and Hinton now appeal to this Court.

## II. Assignments of Error

{¶ 15} Friendship and Hinton jointly assert the following assignments of error for review:

Assignment of Error No. 1:

> The trial court erred by holding that the Adjudication Order dated May 20, 2015 in the matter of Hinton Adult Care Facility and the Adjudication Order dated May 19, 2015 in the matter of Friendship Adult Care Facility issued by the Ohio Department of Mental Health and Addiction Services are supported by reliable, probative and substantial evidence and are in accordance with law.
> Decision and Judgment Entry p.p. 11-12

Assignment of Error No. 2:

> The trial court erred by failing to that find [sic.] the Adjudication Orders were contrary to the Social Security Act.
> Decision and Judgment Entry p. 13

Assignment of Error No. 3:

> The trial court erred by holding that Rule 5122-36-04 of the Ohio Administrative
> Code is a valid rule.
> Decision and Judgment Entry p.p. 16-17

### III. Law and Analysis

{¶ 16} Friendship's and Hinton's three assignments of error challenge the propriety of

the common pleas court's judgment affirming the ODMHAS's decision. Because they are

interrelated, we address them together. In essence, Friendship and Hinton contend that the

common pleas court erred in affirming an administrative order that was not in accordance with

law. Specifically, Friendship and Hinton argue that the ODMHAS did not have the rule-making

authority to establish an allowable fee that sets a maximum monthly amount that adult group

homes can charge their residents in the RSS program. As an extension of this argument, they

contend that any other violation of the administrative rules that results from overcharging their

residents is also not in accordance with the law. Finally, Friendship and Hinton contend that the

relevant rules conflict with the Social Security Act.

### A. Standard of Review[1]

{¶ 17} In a R.C. 119.12 administrative appeal, a common pleas court must affirm the

agency's decision if it is supported by "reliable, probative, and substantial evidence and is in

accordance with law." *See Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621, 614 N.E.2d 748

(1993); *In re Williams*, 60 Ohio St.3d 85, 86, 573 N.E.2d 638 (1991). " 'Reliable' evidence is

dependable or trustworthy; 'probative' evidence tends to prove the issue in question and is

relevant to the issue presented; and 'substantial' evidence carries some weight or value." *Ohio*

*Civ. Rights Comm. v. Case W. Res. Univ.*, 76 Ohio St.3d 168, 178, 666 N.E.2d 1376 (1996),

---

[1] The following standard of review is adopted nearly verbatim from this Court's prior decision in *Washington Cty. Home v. Ohio Dept. of Health*, 178 Ohio App.3d 78, 2008-Ohio-4342, 896 N.E.2d 1011, ¶¶ 21-25 (4th Dist.).

citing *Our Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571, 589 N.E.2d 1303 (1992).

{¶ 18} Thus, when a common pleas court reviews the agency's finding, it must "appraise all the evidence * * * 'and, if from such a consideration it finds that the * * * [agency's] order is not supported by reliable, probative, and substantial evidence and is not in accordance with law, the court is authorized to reverse, vacate, or modify the order * * *.' " *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 110, 407 N.E.2d 1265 (1980), quoting *Andrews v. Bd. of Liquor Control*, 164 Ohio St. 275, 131 N.E.2d 390 (1955), paragraph one of the syllabus. "[W]hether an agency order is supported by reliable, probative and substantial evidence essentially is a question of the absence or presence of the requisite quantum of evidence. Although this in essence is a legal question, inevitably it involves a consideration of the evidence, and to a limited extent would permit a substitution of judgment by the reviewing Common Pleas Court." *Id*. at 111. Furthermore, while "a Court of Common Pleas 'must give due deference to the administrative resolution of evidentiary conflicts,' [*id*.], [d]ue deference * * * does not contemplate uncritical acquiescence to administrative findings." *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.*, 66 Ohio St.2d 192, 200, 421 N.E.2d 128 (1981).

{¶ 19} Although a common pleas court may not try the issues de novo or substitute its judgment for the administrative agency, *see Kisil v. Sandusky*, 12 Ohio St.3d 30, 34, 465 N.E.2d 848 (1984), and *Conrad* at 110, it may decide purely legal questions de novo. *See Ohio Historical Soc. v. State Emp. Relations Bd.*, 66 Ohio St.3d 466, 470–471, 613 N.E.2d 591 (1993); *Joudah v. Ohio Dept. of Human Servs.*, 94 Ohio App.3d 614, 616–617, 641 N.E.2d 288 (9th Dist.1994). Thus, "[t]o the extent that an agency's decision is based on construction of the

state or federal Constitution, a statute, or case law, the common pleas court must undertake its

R.C. 119.12 reviewing task completely independently." *Ohio Historical Soc.* at 471.

{¶ 20} In contrast to the common pleas court's standard of review, an appellate court's

review of an administrative agency's order is more limited. *See Lorain City School Dist. Bd. of*

*Edn. v. State Emp. Relations Bd.*, 40 Ohio St.3d 257, 260–261, 533 N.E.2d 264 (1988). It is

incumbent on a common pleas court to examine the evidence. *See Pons,* 66 Ohio St.3d at 621,

614 N.E.2d 748. Such is not the charge of an appellate court. *Id.* Instead, an appellate court must

determine whether the trial court has abused its discretion. *Id.* Thus, absent an abuse of discretion

on the part of the trial court, a court of appeals must affirm the trial court's judgment. *See id.* An

abuse of discretion constitutes more than an error of law or judgment; rather, it implies that the

trial court's attitude was unreasonable, arbitrary, or unconscionable. *See, e.g., Landis v. Grange*

*Mut. Ins. Co.*, 82 Ohio St.3d 339, 342, 695 N.E.2d 1140 (1998); *Malone v. Courtyard by*

*Marriott L.P.*, 74 Ohio St.3d 440, 448, 659 N.E.2d 1242 (1996).

{¶ 21} Additionally, an appellate court must not substitute its judgment for that of an

administrative agency or a common pleas court. *Pons,* 66 Ohio St.3d at 621, 614 N.E.2d 748.

The fact that the court of appeals might have arrived at a different conclusion than did the

administrative agency is immaterial. "With respect to purely legal questions, however, the court

is to exercise independent judgment." *VFW Post 8586 v. Ohio Liquor Control Comm.*, 83 Ohio

St.3d 79, 82, 697 N.E.2d 655 (1998); *see also Nye v. Ohio Bd. of Examiners of Architects,* 165

Ohio App.3d 502, 2006-Ohio-948, 847 N.E.2d 46, ¶ 11 (10th Dist.) (stating that appellate court

has plenary review of legal questions).

**B. The Residential State Supplement Program (RSS)**

{¶ 22} The RSS program is a state program that supplements the income received by aged, blind, or disabled adults under the Social Security Act. "Residential state supplement payments shall be used for the provision of accommodations, supervision, and personal care services to social security, supplemental security income, and social security disability insurance recipients who * * * are at risk of needing institutional care." R.C. 5119.41(B); *see also* R.C. 5119.34(A)(10). The RSS program is administered by the ODMHAS. R.C. 5119.41(A)(2).

{¶ 23} The purpose of the RSS program is:

> [T]o provide cash assistance to medicaid-eligible aged, blind, or disabled adults who have increased needs due to a medical or behavioral health condition which may not be severe enough to require institutionalization. The RSS cash payment is used together with the individual's personal income to help prevent premature or unnecessary institutionalization, and to deinstitutionalize those aged, blind, or disabled adults who have been inappropriately placed in long term care facilities and who can return to the community through alternative living arrangements.

Ohio Adm.Code 5122-36-01(A).

{¶ 24} The ODMHAS has established the allowable monthly fee that adult care facilities can charge RSS participants. At the relevant time for this matter, the allowable fee that could be charged by an adult group home, such as Friendship and Hinton, was $877 per month. Ohio Adm.Code 5122-36-05[2]. The allowable fee is to be accepted as payment in full for all accommodations, supervision, and personal care services provided the RSS resident. The group home "shall not request additional payment for the services from the resident, the resident's family, or any other local, state, or federal agency." Ohio Adm.Code 5122-36-04(D).

---

[2] In January 2016, the rule was amended to allow facilities to charge RSS residents an allowable fee of $1,100 per month.

**C. Licensing of Residential Facilities**

{¶ 25} The General Assembly has also authorized the ODMHAS to inspect and license the operation of residential facilities. R.C. 5119.34(F)(1). Likewise, the ODMHAS may "refuse to issue or renew and may revoke a license if * * *[t]he facility is not in compliance with rules adopted by the director", including rules established to protect "[t]he rights of residents of residential facilities". R.C. 5199.34(F)(2)(a) and R.C. 5199.34(L)(10). Pertinent to the case at hand, at the time of the administrative hearing, the ODMHAS required that residential facilities "assure the rights of the resident * * * include * * * [the] right to manage personal financial affairs" and "[t]he right to be free from abuse, neglect, or exploitation". Ohio Adm.Code 5122-33-23(B)(4) and (B)(15). Ohio Administrative Code 5122-33-23(A)(2) defines "exploitation" as "the unlawful or improper utilization of an adult resident or his or her resources for personal or monetary benefit, profit, or gain."

**D. Validity of Ohio Administrative Code 5122-36-04(D)**

{¶ 26} Friendship and Hinton contend that the common pleas court erred when it determined that the ODMHAS had the authority to promulgate Ohio Administrative Code 5122-36-04(D) - the administrative rule requiring operators of adult group homes to accept the allowable fee set forth in Ohio Administrative Code 5122-36-05 as payment in full for the accommodations, supervision, and personal care services provided RSS residents. Specifically, Friendship and Hinton argue that the ODMHAS lacks the authority to impose an allowable fee because it is outside the authority the General Assembly granted to the agency.

{¶ 27} A challenge to an administrative agency's rulemaking authority presents a question of law; therefore, we exercise a de novo review. *Vargas v. State Med. Bd. of Ohio*, 2012-Ohio-2735, 972 N.E.2d 1076, ¶ 8 (10th Dist.).

{¶ 28} "The purpose of administrative rule-making is to facilitate the administrative agency's placing into effect the policy declared by the General Assembly in the statutes to be administered by the agency. In other words, administrative agency rules are an administrative means for the accomplishment of a legislative end." *Nelson v. Mohr*, 10th Dist. Franklin No. 13AP-130, 2013-Ohio-4506, ¶ 14, citing *Carroll v. Dept. of Adm. Servs.*, 10 Ohio App.3d 108, 110, 460 N.E.2d 704 (10th Dist.1983). "Administrative rules cannot add or subtract from the legislative enactment." *Cowans v. Ohio State Racing Comm.*, 2014-Ohio-1811, 11 N.E.3d 1215, ¶ 52 (10th Dist.), citing *Nelson* at ¶ 14. "Additionally, administrative rules cannot exceed the rulemaking authority delegated by the General Assembly." *Id.*, citing *Nelson* at ¶ 14.

{¶ 29} Under R.C. 5119.41(B), "[t]he department of mental health and addiction services shall implement the residential state supplement program * * *." Likewise, R.C. 5119.41(E) states that "[t]he director of mental health and addiction services and medicaid director shall adopt rules in accordance with Chapter 119. of the Revised Code as necessary to implement the residential state supplement program." In a separate paragraph under R.C. 5119.41(E), the ODMHAS is also granted the authority to "adopt rules establishing the method to be used to determine the amount an eligible individual will receive under the program."

{¶ 30} "In construing a grant of administrative power from a legislative body, both the intention of that grant of power and the extent of the grant must be clear, and, if there is doubt, the doubt must be resolved against the grant of power." *Cowans* at ¶ 54, citing *League of United Latin Am. Citizens v. Kasich*, 10th Dist. Franklin No. 10AP-639, 2012-Ohio-947, ¶ 48.

{¶ 31} Here, Friendship and Hinton contend that while the ODMHAS may adopt rules establishing the method to be used to determine the amount an eligible individual will receive

under the RSS program, nowhere is the ODMHAS given the authority to establish an allowable fee. We disagree.

{¶ 32} In their appellate brief, Friendship and Hinton ignore the provisions of R.C. 5119.41(B), and the first paragraph of R.C. 5119.41(E). Perhaps they do so because a plain reading of R.C. 5119.41(B) and (E) makes clear that the General Assembly granted the ODMHAS broad authority to adopt rules necessary to operate the RSS program. The authority granted to the agency is not limited to establishing benefit amounts as Friendship and Hinton suggest.

{¶ 33} The ODMHAS relied upon R.C. 5119.41, and its predecessor statutes, when it promulgated Ohio Administrative Code 5122-36-04 and 5122-36-05. The rules are intended to establish a fair fee for RSS residents to pay providers, to protect a vulnerable population, and to maintain the integrity of the program and to help RSS participants avoid institutionalization. As such, the rules appear to be consistent with the policy declared by the General Assembly (to protect individuals at risk of institutionalization), and also appear consistent with the authority granted to the agency to establish rules for implementation of the RSS program. Accordingly, Friendship's and Hinton's contention that the ODMHAS lacked the authority to impose an allowable fee rule is misplaced.

### E. Alleged Conflict with the Social Security Act

{¶ 34} Friendship and Hinton also contend that the common pleas court erred when it determined that Ohio Administrative Code 5122-36-04(D) and 5122-36-05 do not conflict with the Social Security Act. Specifically, Friendship and Hinton allege that the rules improperly regulate or limit the receipt of funds to adult group homes from the Social Security Administration.

{¶ 35} " 'Rules promulgated by administrative agencies are valid and enforceable unless unreasonable or in conflict with statutory enactments covering the same subject matter.' " *Hoffman v. State Med. Bd. of Ohio*, 113 Ohio St.3d 376, 2007-Ohio-2201, 865 N.E.2d 1259, ¶ 17, quoting *State ex rel. Curry v. Indus. Comm.*, 58 Ohio St.2d 268, 269, 389 N.E.2d 1126 (1979).

{¶ 36} Here, Friendship and Hinton have failed to identify any provision of the Social Security Act with which the administrative rules supposedly conflict. Moreover, they have provided no facts or evidence to support their contention that the rules regulate or limit the receipt of funds to adult group homes from the Social Security Administration. In any event, Social Security payments made to RSS residents would belong to the residents, not to the adult group home.

{¶ 37} App.R. 16(A)(7) provides: "The appellant shall include in its brief * * * [a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." " 'If an argument exists that can support [an] assignment of error, it is not this court's duty to root it out.' " *Thomas v. Harmon,* 4th Dist. Lawrence No. 08CA17, 2009–Ohio–3299, ¶ 14, quoting *State v. Carman,* 8th Dist. Cuyahoga No. 90512, 2008–Ohio–4368, ¶ 31. " 'It is not the function of this court to construct a foundation for [an appellant's] claims; failure to comply with the rules governing practice in the appellate courts is a tactic which is ordinarily fatal.' " (Alteration sic.) *Catanzarite v. Boswell,* 9th Dist. Summit No. 24184, 2009–Ohio–1211, ¶ 16, quoting *Kremer v. Cox,* 114 Ohio App.3d 41, 60, 682 N.E.2d 1006 (9th Dist.1996). Therefore, "[w]e may disregard any assignment of error that fails to present any citations to case law or statutes in support of its

assertions." *Frye v. Holzer Clinic, Inc.,* 4th Dist. Gallia No. 07CA4, 2008–Ohio–2194, ¶ 12; *accord Oldacre v. Oldacre,* 4th Dist. Ross No. 08CA3073, 2010–Ohio–1651, ¶ 35; *see also* App.R. 12(A)(2).

{¶ 38} Because Friendship's and Hinton's argument that the agency's rules conflict with the Social Security Act consists of unsupported conclusory statements, and is completely devoid of any citations to case law or statutes on the topic, we decline to address it.

{¶ 39} To the extent that Friendship and Hinton rely upon the testimony of Ms. Book, who in turn relied upon the statements of the local Social Security employee, we note that no Social Security employee ever testified at the administrative hearing. Furthermore, Friendship and Hinton asserted that the statements were not being "offered for the truth of the statement [but merely] * * * to show what the effect was on the listeners, the providers." Accordingly, because Friendship and Hinton have failed to cite any authority supporting their contention, and because they failed to present evidence in support of their position, we conclude that the rules do not conflict with the Social Security Act.

### F. Ohio Administrative Code 5122-33-23(B)(4) and (B)(15)

{¶ 40} Friendship and Hinton argue that the common pleas court erred in determining that they violated Ohio Administrative Code 5122-33-23(B)(4) and 5122-33-23(B)(15) because it based its finding on the violation of Ohio Administrative Code 5122-36-04(D), which they contend is an invalid rule. However, because we have already determined that Ohio Administrative Code 5122-36-04(D) was a properly promulgated rule, this argument fails.

{¶ 41} Next, while Friendship and Hinton admit that "[i]t arguably follows that a violation of O.A.C. 5122-36-04 would result in a violation of O.A.C. 5122-33-23(B)(4)", it

denies that the same is true with regard to Ohio Administrative Code 5122-33-23(B)(15). Again we disagree with the argument set forth by Friendship and Hinton.

{¶ 42} At the time of the administrative hearing, pursuant to Ohio Administrative Code 5122-36-04(D) and 5122-36-05, adult group homes were permitted to charge RSS residents no more than $877 a month for accommodations, supervision, and personal care services. There is no dispute that Friendship and Hinton violated the agency's rules and charged all 14 of their RSS residents an impermissible amount. By essentially taking all of their RSS residents' personal income, Friendship's and Hinton's conduct also violated Ohio Administrative Code 5122-33-23(B)(4) by depriving the RSS residents of the right to manage their personal financial affairs.

{¶ 43} The common pleas court also determined that the blatant overcharging of the RSS residents in violation of the agency's rules constituted a violation of Ohio Administrative Code 5122-33-23(B)(15), which specifies that residents have the right to be free from exploitation. The evidence presented at the administrative hearing supports this conclusion. Friendship charged its seven RSS residents over $400 a month more than the permitted rate; and left the residents with only $50 a month in personal spending money. Similarly, Hinton charged its seven RSS residents considerably more than the allowable rate. Based on this evidence, we cannot say that the common pleas court abused its discretion when it determined that Hinton and Friendship exploited their residents by charging a rate in excess of the $877 per month allowable rate.

### IV. Conclusion

{¶ 44} Based on the foregoing, we conclude that Friendship's and Hinton's joint assignments of error are without merit. Accordingly, the assignments of error are overruled, and the judgment of the common pleas court upholding the Adjudication Orders is affirmed.

JUDGMENT AFFIRMED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED. Appellants shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J., and McFarland, J.: Concur in Judgment and Opinion.

For the Court

By:_____
          Marie Hoover, Judge

## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**