[Cite as *In re Contest of Election Held on Stark Cty. Issue 6,* 132 Ohio St.3d 98, 2012-Ohio-2091.]

IN RE CONTEST OF ELECTION HELD ON STARK COUNTY ISSUE 6 (LAKE TOWNSHIP POLICE DISTRICT) IN GENERAL ELECTION HELD NOVEMBER 8, 2011; BISHOP ET AL., APPELLEES AND CROSS-APPELLANTS; CITIZENS FOR LAKE TOWNSHIP POLICE ET AL., APPELLANTS AND CROSS-APPELLEES.

[Cite as *In re Contest of Election Held on Stark Cty. Issue 6,*
132 Ohio St.3d 98, 2012-Ohio-2091.]

*Election contests—Rate of proposed tax levy understated on ballot—Approval of tax levy voided.*

(Nos. 2012-0184 and 2012-0214—Submitted April 3, 2012—Decided May 16, 2012.)

APPEALS and CROSS-APPEAL from the Stark County Court of Common Pleas, No. 2011CV03947.

_____

**Per Curiam.**

{¶ 1}   These are consolidated appeals and a cross-appeal from a judgment of the Stark County Court of Common Pleas setting aside a November 8, 2011 election on Issue 6 in Lake Township, Stark County, Ohio, that approved expansion of the Uniontown Police District to include all of Lake Township's unincorporated territory and levied a property tax for that purpose.   Because the common pleas court did not err in setting aside the election, we affirm the judgment.

**Facts**

{¶ 2}   On June 27, 2011, the Lake Township Board of Trustees adopted a resolution to submit to a vote a proposal to expand the Uniontown Police District to include all of the unincorporated territory of Lake Township, creating the Lake Township Police District, and to levy a tax throughout the area.   The resolution

was to be submitted to the voters, and notice was provided to township voters by publication in the Hartville News on October 21 and 28, 2011.

**{¶ 3}** The November 8, 2011 election ballot provided the following language for Issue 6:

> Shall the unincorporated territory within Lake Township not already included within the Uniontown Police District be added to the township police district to create the Lake Township Police District, and shall a property tax be levied in the new township police district, replacing the tax in the existing township police district, at a rate not exceeding four and one-half (4.50) mills for each one dollar of valuation, which amounts to forty-five cents ($0.45) for each one thousand dollars of valuation, for a continuing period of time, commencing in 2011, first due in calendar year 2012?

**{¶ 4}** The issue was approved by 490 votes, with 5,577 votes in favor and 5,087 votes against.

**{¶ 5}** On December 9, 2011, more than 300 of those who had voted in the November election in Lake Township ("the contestors") filed a verified petition in the Stark County Court of Common Pleas contesting the election approving Issue 6 and requesting that the election be set aside and the issue deemed rejected. The Stark County Board of Elections, Lake Township Board of Trustees, Citizens for Lake Township Police, and the Uniontown Police District were named as contestees. The board of elections, the township board of trustees, and Citizens for Lake Township Police filed an answer, and all parties who had filed pleadings submitted briefs.

**{¶ 6}** At a January 6, 2012 hearing, the parties stipulated to a number of points: the contestors had met the procedural requirements for filing their election

contest; the ballot had erroneously specified a property-tax levy rate not exceeding "four and one-half (4.50) mills for each one dollar of valuation, which amounts to forty-five cents ($0.45) for each one thousand dollars of valuation," when it should have read "a rate not exceeding four and one-half (4.50) mills for each one dollar of valuation, which amounts to four dollars and fifty cents ($4.50) for each one thousand dollars of valuation"; the erroneous ballot language was also contained in the township board of trustees' June 27, 2011 resolution and the board of elections' October 21 and 28, 2011 legal notices published in the Hartville News; all other requirements, including publication, were satisfied; the election contest was in some respects an equitable proceeding; and although other newspaper articles, advertisements, and flyers contained correct figures of the property tax that would be levied if the issue passed, none specified the pertinent $4.50 rate for each $1,000 of valuation.

{¶ 7} The five contestors who had verified the election-contest petition testified at the hearing. Two were not aware of Issue 6's incorrect ballot language until after the election, another's son told him of the language, which he did not know was erroneous until after the election, one did not know of the error until he actually read the ballot, and one discovered a discrepancy in the language when she received her absentee ballot and then received a Lake Township newsletter.

{¶ 8} Thirteen more witnesses testified for the contestors when the hearing continued on January 23, 2012. Eleven testified that they had voted in favor of Issue 6 but that if they had known that the actual property tax to be levied was capped at $4.50 instead of the stated $0.45 for each $1,000 of valuation, they would have voted no on the issue. One of the witnesses had his testimony stricken because he had not voted, and the last testified that he would still have voted in favor of the issue had he known of the correct tax amount. The parties also submitted documentary evidence. Over the contestees' unspecified objections, the contestors submitted the affidavits of ten additional electors who stated that they had voted for Issue 6 during the November 8, 2011 election based

on the erroneous ballot language but would have voted no on the issue if the language had correctly stated the maximum tax rate. The contestees submitted evidence that the Stark County auditor's website had provided any interested person a tool to calculate the cost of the 4.50 mill tax levy under Issue 6 for any parcel's taxable value and that an October 28, 2011 Hartville News article reported the availability of this estimator. Also entered into evidence was a July 29, 2011 e-mail from the office of the secretary of state to a board of elections employee alerting the board that the language of Issue 6 contained an error because a "$4.5 mill levy yields $0.45 per $100 [of valuation], but $*4.50* per $1,000" of valuation instead of the stated $0.45. (Emphasis sic.)

{¶ 9} On January 25, 2012, the common pleas court entered a judgment granting the contest and setting aside the November 8, 2011 election result approving Issue 6. The common pleas court determined that the error in ballot language constituted an election irregularity, that neither laches nor equitable estoppel barred the contestors' claim, and that "[b]ased on the witness testimony, the affidavits, and the compressed time period for hearings on contested elections, Contestors ha[d] met their burden" of establishing that the election irregularity made the election result on Issue 6 uncertain. Judgment was stayed pending appeal.

{¶ 10} In case No. 2012-0184, Citizens for Lake Township Police filed a notice of appeal, and the contestors filed a notice of cross-appeal. In case No. 2012-0214, the township board of trustees filed a notice of appeal. The board of elections did not appeal from the common pleas court's judgment. On March 1, 2012, we granted a motion to consolidate the cases and a motion to expedite the briefing schedule in the consolidated cases. 131 Ohio St.3d 1465, 2012-Ohio-799, 962 N.E.2d 314. This cause is now before the court for our consideration of the merits.

**Legal Analysis**

*Laches and Equitable Estoppel*

{¶ 11} As a preliminary matter, the contestees assert that the trial court erred in ruling that laches and equitable estoppel did not bar the election contest. "For election cases, laches is not an affirmative defense, and [persons seeking relief] have the burden of proving that they acted with the requisite diligence." *State ex rel. Vickers v. Summit Cty. Council*, 97 Ohio St.3d 204, 2002-Ohio-5583, 777 N.E.2d 830, ¶ 13. In this case, the irregularity was plainly on the ballot, and the contestors arguably should have known of the defect before the election and could have raised their claim in a preelection contest. R.C. 505.481(B)[1] specifies how the ballot issue of this type is to read if a tax is included:

> If a tax is imposed in the existing township police district, the question shall be modified by adding, at the end of the question, the following: ", and shall a property tax be levied in the new township police district, replacing the tax in the existing township police district, *at a rate not exceeding ......... mills per dollar of taxable valuation, which amounts to ......... (rate expressed in dollars and cents per one thousand dollars in taxable valuation)*, for ......... (number of years the tax will be levied, or "a continuing period of time")."

(Emphasis added.)

{¶ 12} The township resolution ordering the submission of the issue to the electorate, legal notices of the ballot issue, and the ballot language for Issue 6 all specified that the property tax to be levied for the Lake Township Police District would be "at a rate not exceeding four and one-half (4.50) mills for each one

---

1. R.C. 505.481 is former R.C. 505.482, which was recodified effective September 29, 2011. 2011 Am.Sub.H.B. No. 153, Section 101.01.

dollar of valuation, which amounts to forty-five cents ($0.45) for each one thousand dollars of valuation." However, 4.50 mills for each dollar of valuation is actually ten times greater—$4.50, rather than $0.45, for each $1,000 of valuation.

**{¶ 13}** Even though the defect was plain, the equitable doctrines of laches and estoppel do not bar the contestors' election contest for several reasons. First, we have long held that in cases involving tax levies and bond issues, " 'the form of the ballot and all procedural steps are conditions precedent to the validity of the election.' " *Beck v. Cincinnati*, 162 Ohio St. 473, 476, 124 N.E.2d 120 (1955), quoting the trial court decision in that case. Second, we have permitted parties to raise claims challenging the propriety of tax levies and bond issues even after an election approving them without applying laches or estoppel. *E.g., id.* at 476. Third, both laches and equitable estoppel are doctrines of equity. *Wilson v. Kasich*, 131 Ohio St.3d 249, 2012-Ohio-612, 963 N.E.2d 1282, ¶ 7 ("laches is an equitable doctrine"). The uncontroverted evidence is that the secretary of state's office alerted the board of elections to the erroneous ballot language in late July 2011—well in advance of the deadline to make absentee ballots for the November 8, 2011 election available—but the board did not correct the defect. If the board had acted promptly, any error could have been avoided.

**{¶ 14}** The contestees' reliance on our decision in *Smith v. Scioto Cty. Bd. of Elections*, 123 Ohio St.3d 467, 2009-Ohio-5866, 918 N.E.2d 131, is misplaced. In that case, we reversed the judgment of a court of common pleas granting an election contest and setting aside an election because laches barred the contestors' claims of defective ballot language. The alleged irregularity in that case—the statement that the proposed charter amendment required a majority of city voters rather than just a majority of those voting—was "not so substantial that relators should be permitted to sleep on their rights until after an adverse election result." *Id.* at ¶ 16.

6

{¶ 15} In contrast, the irregularity here is so substantial that neither laches nor estoppel bars the election contest. R.C. 505.481(B) requires that immediately after stating the tax rate in "mills per dollar of taxable valuation," the ballot must specify that this figure "amounts to" a certain "rate expressed in dollars and cents per one thousand dollars in taxable valuation." An expression of dollars per thousand in taxable valuation is to inform the voter of the amount of the tax that will be levied. By erroneously understating the tax in dollars and cents with an amount ten times lower, the irregularity substantially misled the average elector. For example, the defective ballot informed an owner of property with a taxable valuation of $100,000 that the tax would be $45 ($0.45 per $1,000), although the actual tax to be levied on the property would be ten times greater—$450 ($4.50 per $1,000). The contestees' reliance on other materials that were available, such as mailings by groups supporting Issue 6, does not rectify this fatal error, because none of these materials expressed the tax-levy amount in the terms required by R.C. 505.481(B)—dollars and cents per $1,000 of taxable valuation.

{¶ 16} Therefore, we uphold the trial court's determination that the election contest is not barred by laches or equitable estoppel.

*Election Contest*

{¶ 17} To prevail in their election contest, contestors "had to establish by clear and convincing evidence that one or more election irregularities occurred and that the irregularity or irregularities affected enough votes to change or make uncertain the result of the * * * election." *Maschari v. Tone*, 103 Ohio St.3d 411, 2004-Ohio-5342, 816 N.E.2d 579, ¶ 21. As previously noted, the parties stipulated that the election ballot's failure to comply with R.C. 505.481(B) by understating the correct tax amount for the police district levy by ten times less than the actual amount constituted an election irregularity.

{¶ 18} For the second part of the test, the trial court determined that the contestors were not required to bring into court 246 voters who voted for Issue 6 to testify that they would have voted no if the ballot language stating the tax in

dollars and cents per $1,000 of valuation had been correct. Contestees are correct that ordinarily, evidence that 21 voters would have voted differently in the absence of any election irregularity would not be clear and convincing evidence that the irregularity affected enough votes to either change the outcome or make it uncertain when the margin by which the issue was approved is 490 votes. *See State ex rel. Yiamouyiannis v. Taft*, 65 Ohio St.3d 205, 208-209, 602 N.E.2d 644 (1992) (statistical analysis rejected in election case based on a small sample of petition signatures erroneously invalidated by a board of elections); *In re Election on the Issue of Zoning the Southeasterly Section of Swanton Twp.*, 2 Ohio St.3d 37, 40, 442 N.E.2d 758 (1982) (contestors must affirmatively show how many illegal votes were cast, and court cannot speculate on whether enough votes were affected by the alleged irregularities to change the election result).

{¶ 19} But in tax-levy and bond cases, we have presumed the invalidity of the election more readily in the context of a postelection proceeding. *E.g., Beck*, 162 Ohio St. at 476, 124 N.E.2d 120 (failure to follow procedural steps concerning submission of tax levy is fatal). The degree of the error here was substantial. The defective language on the ballot, notice, and authorizing resolution understated the actual tax to be levied by Issue 6 by ten times less than the actual tax. In calculating the error, there is no evidence that the township or the election officials were faced with any problems estimating the amount of the levy. Finally, the issue was passed by approximately 52.3 percent of the vote—hardly an overwhelming majority. *See generally State ex rel. Southeastern Local School Dist. Bd. of Edn. v. Allen,* 102 Ohio App. 315, 317, 143 N.E.2d 159 (4th Dist.1955). A misstatement that property owners would pay ten times less than the actual taxes they would pay constituted a substantial defect that materially misled voters about the levy. The contestors' witnesses testified that they were, in fact, misled.

{¶ 20} Therefore, the contestors have satisfied their heavy burden of establishing by the requisite clear and convincing evidence that the election

irregularity affected enough votes to make the election result on Issue 6 uncertain. Insofar as the contestees challenge the reasons given by the common pleas court for granting the contest, e.g., the reliance on the "compressed time period for hearings on contested elections" and affidavits that had been objected to by the contestees, contestees' assertions, even if true, would not alter the dispositive fact that the judgment granting the contest and setting aside the election was correct. *See Maschari*, 103 Ohio St.3d 411, 2004-Ohio-5342, 816 N.E.2d 579, ¶ 32.[2]

*Cross-Appeal*

**{¶ 21}** In their cross-appeal, the contestors claim that if the court reverses the judgment granting the election contest, it should remand the cause for further proceedings so that they can be permitted to conduct further discovery on whether the board of elections and the township knew that the ballot language was incorrect and did nothing to correct it. Because we affirm the judgment of the common pleas court, the contestors' cross-appeal is moot and need not be addressed. *See State ex rel. United Auto., Aerospace & Agricultural Implement Workers of Am. v. Bur. of Workers' Comp.*, 108 Ohio St.3d 432, 2006-Ohio-1327, 844 N.E.2d 335, ¶ 59-61.

**Conclusion**

**{¶ 22}** This case presents the extreme circumstances of a misstatement in ballot wording that understated a proposed tax levy by ten times less than the true amount to be collected, which misled the voters and clearly affected the integrity of the November 8, 2011 election on Issue 6. Based on the applicable law, we

---

2. Because the contestees did not specify any objection to the affidavits submitted by the contestors during the election-contest proceedings below, they waived any argument that the trial court's admission of this evidence was erroneous because it constituted hearsay or denied them their right of confrontation. *See* Evid.R. 103(A)(1) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and * * * [i]f case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context"). And the argument on appeal by contestee Citizens for the Lake Township Police that the trial court denied them "an opportunity to present evidence or testimony from those who voted for the election that they either knew of the irregularity and voted in favor, or that, if they did not know of the irregularity, upon being informed would still support it" is not supported by any record citation or a review of the record.

affirm the judgment of the common pleas court granting the contest and setting aside the election.

Judgment affirmed.

O'CONNOR, C.J., and LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

PFEIFER, J., concurs in judgment only.

_____

Baker, Dublikar, Beck, Wiley & Mathews, Eric J. Stecz, and Mel L. Lute Jr.; and Grady Law Office, L.L.C., and Michael J. Grady, for appellees and cross-appellants.

Hall Law Firm and Charles D. Hall III; and Alysse L. McCandlish, for appellant and cross-appellee Citizens for the Lake Township Police.

John D. Ferrero, Stark County Prosecuting Attorney, and Deborah A. Dawson and David M. Bridenstine, Assistant Prosecuting Attorneys, for appellant and cross-appellee Lake Township Board of Trustees.

_____