Hoover, P.J.
{¶ 1} After the Harrison Township Board of Zoning Appeals ("board") denied *624 the application of Columbus Bituminous Concrete Corporation and Shelly Materials, Inc. (collectively referred to as "CBCC") for a conditional-use zoning certificate to operate a sand and gravel quarry in Harrison Township, CBCC appealed the decision to the Pickaway County Court of Common Pleas under R.C. Chapter 2506.
{¶ 2} The common pleas court denied CBCC's appeal and affirmed the board's decision denying its application for a conditional-use zoning certificate because: (1) the board properly considered Section 9.03 of the Harrison Township Zoning Resolution, as allowed by R.C. 519.141, in denying CBCC's application; and (2) substantial, reliable, and probative evidence was introduced at the board's proceedings to support the board's findings that some sections of Section 9.03 of the zoning resolution were not met. The court also granted CBCC's motion to strike a binder containing evidence and argument submitted by Berger Health System ("Berger Health") in the board proceedings because it was not considered by the board in its decision.
{¶ 3} On appeal, CBCC asserts that the common pleas court erred by failing to limit its review of its request for a conditional-use zoning certificate for sand and gravel mining to criteria that are "only in the interest of public health or safety" and "matters that are [not] regulated by any federal, state, or local agency" as required by R.C. 519.02 and 519.141(A). We conclude that the court, the board, and Berger Health properly relied on a reading of R.C. 519.141(A) that comports with its plain language: that the board "may require as a condition of the approval of a conditional zoning certificate for such an activity compliance with any general standards contained in the zoning resolution that apply to all conditional uses that are provided for in the zoning resolution * * *." That is, the board of zoning appeals is authorized to treat compliance with general standards in a zoning resolution as a condition precedent to the approval of a conditional zoning certificate. Therefore, Sections 9.03(B), (E), and (F) of the township zoning resolution could be considered by the board to deny CBCC's application for a conditional zoning certificate for sand and gravel mining on its property.
{¶ 4} CBCC next claims that the common pleas court's decision is not supported by a preponderance of substantial, reliable, and probative admissible evidence as a matter of law. We reject this claim because our review of the record establishes that the common pleas court's decision was supported by a preponderance of reliable, probative, and substantial evidence. We overrule CBCC's first and second assignments of error and affirm the judgment affirming the board's decision denying CBCC's application for a conditional-use zoning certificate.
{¶ 5} On cross-appeal, Berger Health contends that if the court reverses the common pleas court's judgment, we should consider its claim that the common pleas court erred by granting CBCC's motion to strike its binder of evidence and argument from the administrative record. Because our affirmance of the court's judgment on the merits renders the cross-appeal moot, we need not address it.
I. Facts and Procedural Posture
{¶ 6} Columbus Bituminous Concrete Corporation owns 178.9 acres of land in Harrison Township, Pickaway County, Ohio that Shelly Materials, Inc. wants to mine for sand and gravel. The property is zoned General Business District and Flood Plain Overlay District, and the township zoning resolution permits quarrying and mining as conditional uses in the General Business District.
*625 {¶ 7} CBCC applied for a conditional zoning certificate to use the property for sand and gravel surface mining at a quarry on Weigand Road in Harrison Township. The property is bordered on the north by property owned by the city of Columbus that is vacant and zoned Agricultural District, on the east by property owned by Davon, Inc., that is zoned Agricultural District and Flood Plain District and contains a concrete batch plant, on the south by property owned by Berger Health that is zoned and used as an Agricultural District, and on the west by U.S. 23 and beyond the highway by property that is zoned Agricultural District. The Pickaway County Engineer approved CBCC's proposed ingress and egress to the mining site and concluded that the road improvements should be sufficient to accommodate the additional truck traffic related to the quarry and also vastly improve the safety of the nearby intersection of Weigand Road and U.S. 23. The Pickaway County Commissioners adopted the engineer's approval of the proposed ingress/egress improvements to the quarry site.
{¶ 8} The board conducted a hearing on CBCC's application. CBCC presented the testimony of several individuals, who testified that: (1) the mining operation will include mounds that will act as sound, sight, and safety barriers from adjoining property; (2) spill-protection plans for the project will be monitored by the Ohio EPA; (3) roughly 180 truck trips a day are estimated for the project; (4) the project will adhere to all federal, state, and local regulations; (5) the dust from the operation will be regulated by the Ohio EPA and mitigated by using water; (6) the project will not have any effect on the level or quality of nearby residential wells; (7) the project will not cause a rise in the 100-year floodplain; (8) the project, with its included mounds, would not increase the noise level of the surrounding area; and (9) the project complies with all applicable standards of the township zoning resolution.
{¶ 9} A Berger Health representative testified that the plan conflicted with the North Gate Alliance Strategic Land Use Plan and was at odds with its own plans for the future development of land they owned to the south of the CBCC property. An engineer testified that he believed that another hydraulic and hydrologic study was required to test the impact of the proposed mining upstream. And an economic development director testified that the proposed mining would violate the North Gate plan by disrupting planned north-south access roads that would run parallel to U.S. 23 and exit onto Weigand Road and not limiting gravel quarrying to the west side of U.S. 23. At the conclusion of the hearing, the board denied CBCC's application without stating any findings. In a written decision mailed almost two weeks later, the board of zoning appeals stated that "[a]fter considering all of the evidence submitted to the [board], the [board] determined that applicant was unable to affirmatively prove all the requirements of Section 9.03 of the Harrison Township Zoning [Resolution]."
{¶ 10} CBCC timely appealed the denial of its application for a conditional zoning certificate to the Pickaway County Court of Common Pleas pursuant to R.C. Chapter 2506. It named the board of zoning appeals, the township zoning inspector, Harrison Township, Berger Health, and two individuals as appellees. After the parties submitted briefs and CBCC moved to strike a binder submitted by Berger Health at the final board hearing, the court issued a decision granting the motion to strike and affirming the decision of the board.
{¶ 11} The trial court concluded that under R.C. 519.141(A), the board of zoning *626 appeals was permitted to require compliance with all of its general standards that apply to all conditional uses as well as any specified measure listed in the statute. It further concluded that the administrative record contained substantial, reliable, and probative evidence that divisions (B), (E), and (F) of Section 9.03 of the Harrison Township Zoning Resolution were not met because: (1) the proposed use was not harmonious and appropriate to the existing or intended character of the general vicinity and would change its essential character by increasing vehicle traffic and not providing a sight and sound barrier to the south of the property; (2) the proposed use was potentially detrimental to the general welfare because of potential complications from water overflow and increased particulate matter and fugitive dust; and (3) the proposed use would not be consistent with the North Gate plan because of traffic on U.S. 23, disruption of new access roads parallel to U.S. 23, and the plan contemplates future gravel quarry activity only on the west side of U.S. 23.
{¶ 12} CBCC appeals the common pleas court's affirmance of the board's denial of its application for a conditional zoning certificate, and Berger Health cross-appeals the court's grant of CBCC's motion to strike.
II. Assignments of Error
{¶ 13} In its appeal, CBCC assigns the following errors for our review:
1. The trial court erred in failing to limit its review of a request for a conditional use for sand and gravel mining permitted and regulated by R.C. Chapter 1514 to criteria that are "only in the interest of public health or safety" and "matters that are [not] regulated by any federal, state, or local agency" as required by R.C. 519.02 and R.C. 519.141(A).
2. The trial court's decision is not supported by the necessary preponderance of substantial, reliable and probative admissible and relevant evidence as a matter of law.
{¶ 14} In its cross-appeal, Berger Health assigns the following error:
The common pleas court erred in granting the Motion to Strike the "Berger Binder" from the administrative record. (Aug. 31, 2017 Decision and Entry.)
III. Standard of Review
{¶ 15} "In an R.C. 2506.01 administrative appeal, the common pleas court considers the whole record and determines whether the administrative order is 'unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence." Independence v. Office of the Cuyahoga Cty. Executive , 142 Ohio St.3d 125, 2014-Ohio-4650, 28 N.E.3d 1182, ¶ 13, quoting R.C. 2506.04. "The court weighs the evidence to determine whether a preponderance of reliable, probative, and substantial evidence supports the administrative decision, and if it does, the court may not substitute its judgment for that of the board." Id. citing Dudukovich v. Lorain Metro. Hous. Auth. , 58 Ohio St.2d 202, 207, 389 N.E.2d 1113 (1979). "If it does not, the court may reverse, vacate, or modify the administrative decision." Id. ; R.C. 2506.04.
{¶ 16} "Under R.C. Chapter 2506, the standard of review for a court of appeals is even more limited." Ellison v. Hillsboro , 2016-Ohio-1556, 63 N.E.3d 555, ¶ 20 (4th Dist.), citing Henley v. Youngstown Bd. of Zoning Appeals , 90 Ohio St.3d 142, 147, 735 N.E.2d 433 (2000). "The court of appeals reviews the common pleas court's judgment only on questions of law and does not have the same extensive authority to weigh the evidence."
*627 Independence at ¶ 14, citing Henley at 147, 735 N.E.2d 433. "Within the ambit of questions of law for appellate-court review is whether the common pleas court abused its discretion [and] [t]he court of appeals must affirm unless it finds, as a matter of law, that the trial court's decision is not supported by a preponderance of reliable, probative, and substantial evidence." Id.
{¶ 17} "In sum, the standard of review for courts of appeals in administrative appeals is designed to strongly favor affirmance. It permits reversal only when the common pleas court errs in its application or interpretation of the law or its decision is unsupported by a preponderance of the evidence as a matter of law." Cleveland Clinic Found. v. Bd. of Zoning Appeals of Cleveland , 141 Ohio St.3d 318, 2014-Ohio-4809, 23 N.E.3d 1161, ¶ 30 ; Ellison at ¶ 21. Therefore, with this restricted standard of review guiding our analysis-and with other principles of review as set forth under the applicable assignments of error-we address the merits of the assigned errors.
IV. Law and Analysis
A. CBCC's Appeal: General Principles and Standard of Review for Statutory Interpretation
{¶ 18} In CBCC's first assignment of error, it asserts that the common pleas court erred in failing to limit its review of its request for a conditional-use zoning certificate for sand and gravel mining permitted and regulated by R.C. Chapter 1514 to criteria that are "only in the interest of public health or safety" and "matters that are [not] regulated by any federal, state, or local agency" as required by R.C. 519.02 and 519.141(A).
{¶ 19} "Ohio townships have no inherent or constitutionally granted police or zoning power." Terry v. Sperry , 130 Ohio St.3d 125, 2011-Ohio-3364, 956 N.E.2d 276 ¶ 18. Consequently, the zoning authority possessed by Ohio townships is limited to that which is specifically conferred by the General Assembly. Id. citing Bd. of Bainbridge Twp. Trustees v. Funtime, Inc. , 55 Ohio St.3d 106, 108, 563 N.E.2d 717 (1990).
{¶ 20} For any activities permitted and regulated under R.C. Chapter 1513 or 1514, including sand and gravel mining, "the board of township trustees may regulate under the authority conferred by this section only in the interest of public health or safety ." (Emphasis added.) R.C. 519.02(A). R.C. 519.14(C) authorizes a township board of zoning appeals to grant conditional zoning certificates for the use of land if provided for in the zoning resolution and requires the board to proceed in accordance with R.C. 519.141(A) when considering conditional zoning certificates for activities permitted and regulated under R.C. Chapter 1514:
The township board of zoning appeals may:
* * *
(C) Grant conditional zoning certificates for the use of land, buildings, or other structures if such certificates for specific uses are provided for in the zoning resolution. If the board considers conditional zoning certificates for activities that are permitted and regulated under Chapter 1514. of the Revised Code or activities that are related to making finished aggregate products, the board shall proceed in accordance with section 519.141 of the Revised Code.
{¶ 21} R.C. 519.141(A) precludes a township board of zoning appeals from considering or basing its determination on conditional zoning certificates on matters that are regulated by any federal, state, or local agency, but permits the board to require "as a condition of the approval of a conditional zoning certificate for such an activity *628 compliance with any general standards contained in the zoning resolution that apply to all conditional uses that are provided for in the zoning resolution" (emphasis added):
(A) If a township board of zoning appeals considers conditional zoning certificates for activities that are permitted and regulated under Chapter 1514. of the Revised Code or activities that are related to making finished aggregate products, the board shall not consider or base its determination on matters that are regulated by any federal, state, or local agency. However, the board may require as a condition of the approval of a conditional zoning certificate for such an activity compliance with any general standards contained in the zoning resolution that apply to all conditional uses that are provided for in the zoning resolution and, except as provided in division (C) of this section, may require any specified measure, including, but not limited to, one or more of the following:
(1) Inspections of nearby structures and water wells to determine structural integrity and water levels;
(2) Compliance with applicable federal, state, and local laws and regulations;
(3) Identification of specific roads in accordance with division (B) of section 303.141 of the Revised Code to be used as the primary means of ingress to and egress from the proposed activity;
(4) Compliance with reasonable noise abatement measures;
(5) Compliance with reasonable dust abatement measures;
(6) Establishment of setbacks, berms, and buffers for the proposed activity;
(7) Establishment of a complaint procedure;
(8) Any other measure reasonably related to public health and safety.
* * *
(C) When granting a conditional zoning certificate, a township board of zoning appeals shall not require the identification of specific roads, as otherwise authorized in division (A)(3) of section 303.141 of the Revised Code, and the identification of specific roads in accordance with division (B) of that section shall not apply, for any of the following:
(1) The transfer of unfinished aggregate material between facilities that are under the control of the same owner or operator;
(2) The loading or unloading of finished aggregate product within a ten-mile radius of a surface mining operation;
(3) The expansion of an existing surface mining operation when the specific road that is used as the primary means of ingress to and egress from the operation will be the same road that is used for that purpose after the expansion of the facility.
{¶ 22} This assignment of error turns on a question of law-the statutory interpretation of R.C. 519.141(A). "The interpretation of a statute is a question of law that we review de novo." Stewart v. Vivian , 151 Ohio St.3d 574, 2017-Ohio-7526, 91 N.E.3d 716, ¶ 23 ; Wray v. Gahm Properties, Ltd. , 2018-Ohio-50, 103 N.E.3d 148, ¶ 8 (4th Dist.) ("This case also involves statutory construction, which raises a question of law that we review de novo"); see also Cleveland Clinic Found. v. Cleveland Bd. of Zoning Appeals , 141 Ohio St.3d 318, 2014-Ohio-4809, 23 N.E.3d 1161, ¶ 25 (statutory interpretation is a question of law that can be raised in an R.C. Chapter 2506 administrative appeal that the appellate court decides de novo).
{¶ 23} Our paramount concern when construing a statute is legislative intent.
*629 State ex rel. Natl. Lime and Stone Co. v. Marion Cty. Bd. of Commrs. , 152 Ohio St.3d 393, 2017-Ohio-8348, 97 N.E.3d 404, ¶ 14. In determining this intent, we first review the language of the statute, reading words and phrases in context and construing them in accordance with the rules of grammar and common usage. State ex rel. Tam O'Shanter Co. v. Stark Cty. Bd. of Elections , 151 Ohio St.3d 134, 2017-Ohio-8167, 86 N.E.3d 332, ¶ 17 ; R.C. 1.42. "Our role is to evaluate the statute as a whole and to interpret it in a manner that will give effect to every word and clause, avoiding a construction that will render a provision meaningless or inoperative." State ex rel. Natl. Lime and Stone Co. at ¶ 14.
B. R.C. 519.141(A) Authorizes a Township Board of Zoning Appeals to Deny a Conditional Zoning Certificate Based on General Standards Contained in a Zoning Resolution that Apply to All Conditional Uses
{¶ 24} Neither the common pleas court nor the parties deny that under R.C. 519.02(A), the board may regulate "only in the interest of public health or safety" and that under the first sentence in R.C. 519.141(A), when it considers whether to grant a conditional zoning certificate, the board "shall not consider or base its determination on matters that are regulated by any federal, state, or local agency."
{¶ 25} The common pleas court concluded that under the second sentence of R.C. 519.141(A), however, the board could deny a conditional zoning certificate based on compliance with any general standards contained in the zoning resolution that apply to all conditional uses that are provided for in the resolution. Berger Health and the board agree with this interpretation, while CBCC asserts in its first assignment of error that it is erroneous. The second sentence reads in pertinent part: "However, the board may require as a condition of the approval of a conditional zoning certificate for such an activity compliance with any general standards contained in the zoning resolution that apply to all conditional uses that are provided for in the zoning resolution and, except as provided in division (C) of this section, may require any specified measure, including, but not limited to, one or more of the following [listed items, i.e., inspection of nearby water wells, compliance with reasonable noise and dust-abatement procedures, and the establishments of setbacks, berms, and buffers for the proposed activity]." (Emphasis added.)
{¶ 26} The common pleas court and the appellees construe the foregoing language of R.C. 519.141(A) to permit a board of zoning appeals to consider an applicant's compliance with the general standards of the zoning resolution in determining whether to grant the conditional zoning certificate, even if these general standards are not limited to "public health or safety" as required by R.C. 519.02(A) or involve matters regulated by other federal, state, and local agencies as precluded by the first sentence in R.C. 519.141(A). This is a construction that requires us to read the statutory language as a condition precedent to the approval of the conditional zoning certificate, or as Berger Health phrases it in its appellate brief, " R.C. 519.141(A) expressly permits township zoning regulations that require compliance with general standards as a condition to approving such an operation " or "The common pleas court correctly recognized the authority granted to townships in R.C. 519.141(A) to require compliance with general standards as a condition to approving a sand and gravel mining operation ." (Emphasis added.) (Berger App Response Brief, p. 1)
{¶ 27} The statutory language is that "the board may require as a condition of *630 the approval of a conditional zoning certificate for such an activity " compliance with general standards. (Emphasis added.) Applying the normal rules of grammar and common usage to the "of" in the phrase "condition of the approval of a conditional zoning certificate," the first "of" is synonymous with "to" because the "approval of the conditional zoning certificate" for the proposed sand and gravel mining may be conditioned on the applicant's compliance with general standards in the zoning resolution that apply to all conditional zoning uses, i.e., the board of zoning appeals may require that a source or reason for the approval of the conditional zoning certificate be the applicant's compliance with the general standards specified in the zoning resolution. See Webster's New Universal Unabridged Dictionary at 1343, defining "of" to include "used to indicate derivation, origin, or source," "used to indicate cause, motive, occasion, or reason," and "used to indicate the objective relation, the object of the action noted by the preceding noun or the application of a verb or adjective." Therefore, the plain language of the statute supports the common pleas court's and the board's interpretation.
{¶ 28} This construction is also supported by the context of the second sentence in which the phrase appears. See D.A.B.E., Inc. v. Toledo-Lucas Cty. Bd. of Health , 96 Ohio St.3d 250, 2002-Ohio-4172, 773 N.E.2d 536, ¶ 19 ("our attention should be directed beyond single phrases, and we should consider, in proper context, all words used by the General Assembly in drafting [the statute] with a view to its place in the overall statutory scheme"). Although the first sentence notes the general principle that "the board shall not consider or base its determination on matters that are regulated by any federal, state, or local agency," the second sentence starts with "[h]owever," establishing that the second sentence is an exception to the general principle. The pertinent part of the second sentence then authorizes the board to condition the approval of the zoning certificate on the applicant's compliance with the general standards contained in the zoning resolution notwithstanding the foregoing general principle. The second sentence finally provides that "except as provided in division (C) of this section, may require any specified measure, including, but not limited to, one or more of the following [listed items]." Division C of R.C. 519.141 provides that "[w]hen granting a conditional zoning certificate, a township board of zoning appeals shall not require the identification of specific roads" for certain situations. The import of the final part of the second sentence is that the board may also specify measures contained in an approved or granted conditional zoning certificate. So construed, the General Assembly has balanced the competing interests and authorized the board of zoning appeals to limit surface mining activities if they do not comply with the general standards in the zoning resolution. In the alternative or in conjunction with that authority, the board can also attach the stated requirements to an approved conditional-use zoning certificate.
{¶ 29} This construction of R.C. 519.141(A) also comports with the longstanding general principle that "[t]he power of townships to enact zoning resolutions to regulate surface mining, pursuant to R.C. Chapter 519, has not been preempted by enactment of R.C. Chapter 1514." Set Prods., Inc. v. Bainbridge Twp. Bd. of Zoning Appeals , 31 Ohio St.3d 260, 510 N.E.2d 373 (1987), paragraph three of the syllabus; Baldwin's, Ohio Township Law , Section 30:2 (2017). Townships may regulate surface mining, as long as its resolutions do not directly conflict with R.C. Chapter 1514. Baldwin's, Ohio Township Law , Section 30:2 (2017), citing Ohio Op, *631 Att'y Gen. No. 81-065. Our construction of R.C. 519.141 does not conflict with R.C. Chapter 1514, but instead clearly authorizes a township board of zoning appeals to deny an application for a conditional zoning certificate based on general standards contained in the zoning resolution that apply to all conditional uses that are provided for in the zoning resolution.
{¶ 30} Finally, CBCC's reliance on other appellate court cases to support its interpretation of R.C. 519.141(A) is misplaced. In Highlanders Ent., L.L.C. v. Chester Twp. Bd. of Zoning Appeals , 5th Dist. Morrow No. 2009CA0001, 2009-Ohio-3402, 2009 WL 2005240, ¶ 20, the court of appeals reversed a common pleas court's affirmance of a board of zoning appeals' denial of a conditional-use permit based on general zoning standards like increased traffic, dust, and noise because the board was not authorized to deny conditional zoning certificates on these grounds:
Section 1513 governs coal mining, and section 1514 pertains to surface mining. Highlanders is a mining company regulated under R.C. 1514; therefore, the BZA could regulate only in the interest of public health and safety issues. Accordingly, BZA's denial of the conditional use application citing the increase in traffic, dust and noise, and a decrease in property values does not meet the statutory criteria. The record is void of evidence demonstrating the adverse affect [sic] of the use on public health and safety. The surface mining for which Highlanders sought the conditional use permit is governed by both the Ohio Department of Natural Resources and the Ohio Environmental Protection Agency.
{¶ 31} Similarly, in Shamrock Materials, Inc. v. Butler Cty. Bd. of Zoning Appeals , 12th Dist. Butler No. CA2007-07-172, 2008-Ohio-2906, 2008 WL 2404721, ¶¶ 19-21, the court of appeals reversed a common pleas court's affirmance of a board of zoning appeals' denial of a conditional-use permit because the board improperly considered criteria concerning the general welfare of neighboring residents under the similarly worded provisions of R.C. Chapter 302:
The common pleas court held that "[u]nder R.C. 303.02(A), the BZA was permitted to consider only the interests of public health and safety. Based on the transcript of the hearing and the written conclusions, the BZA considered the health, safety, and welfare of the neighboring residents, thus exceeding the scope authorized by the Ohio Revised Code."
However, the common pleas court further determined that "[a]lthough the BZA scope of review was broader than the permitted health and safety, the inclusion of 'welfare' does not render BZA's decision illegal. Even if the welfare concerns are stricken from the BZA findings, the remaining safety reasons are valid and sufficient reasons to deny Shamrock's application. * * * In its conclusions the BZA explicitly denied Shamrock's application because of a concern for the safety of children and implicitly denied it out of safety concerns due to the limited ingress-egress to the residences located on Radabaugh Road."
We disagree with the common pleas court's decision. The lower court correctly found that the Revised Code limits a county to only consider interests of public health and safety when regulating mining operations. Further, the common pleas court properly found that the BZA exceeded its statutory authority by considering welfare.
{¶ 32} But neither Highlanders Ent. nor Shamrock Materials considered or applied the language of the second sentence of *632 R.C. 519.141(A), which is at issue here. Consequently, their holdings are inapplicable to the case sub judice.
{¶ 33} Therefore, after construing the pertinent plain language of R.C. 519.141(A), including in the context of the entire statute, as well as the general principle that the power of townships to enact zoning resolutions to regulate surface mining, pursuant to R.C. Chapter 519, has not been preempted by enactment of R.C. Chapter 1514, we hold that the common pleas court did not err in interpreting R.C. 519.141(A) to permit the board of zoning appeals to deny CBCC's application for a conditional zoning certificate to use its property for surface sand and gravel mining based on general standards in the township zoning resolution that apply to all conditional uses. We overrule CBCC's first assignment of error.
C. The Board's Decision Denying CBCC's Application for a Conditional Zoning Certificate was Supported by a Preponderance of Substantial, Reliable, and Probative Evidence
{¶ 34} In its second assignment of error, CBCC contends that "[a]ssuming, arguendo , [Harrison Township Zoning Resolution Sections] 9.03(B), (E), and (F) could be considered by the trial court (and [the board of zoning appeals] ), which [CBCC] den[ies], the general decision of the [board of zoning appeals] and the findings and decision of the trial court denying [CBCC] their right to mine their valuable mineral resources were not supported by substantial, reliable or probative evidence, as a matter of law." " 'Reliable' evidence is dependable or trustworthy; 'probative' evidence tends to prove the issue in question and is relevant to the issue presented; and 'substantial' evidence carries some weight or value." Ohio Civ. Rights Comm. v. Case W. Res. Univ. , 76 Ohio St.3d 168, 178, 666 N.E.2d 1376 (1996), citing Our Place, Inc. v. Ohio Liquor Control Comm. , 63 Ohio St.3d 570, 571, 589 N.E.2d 1303 (1992) ; see also Hinton Adult Care Facility v. Ohio Dept. of Mental Health , 4th Dist. Ross No. 16CA3566, 2017-Ohio-4113, 2017 WL 2417088, ¶ 17.
{¶ 35} We agree with Berger Health that CBCC's argument relies primarily on reiterating the failed contentions in its first assignment of error, i.e., that the trial court erred in determining that the board's denial of its application for a conditional zoning certificate was supported by a preponderance of reliable, probative, and substantial evidence when the matters were not in the interest of public health or safety and were regulated by other agencies. Insofar as CBCC repeats these meritless contentions, they fail under this assignment of error as well.
{¶ 36} Moreover, our review of the record supports the common pleas court's determination. The court determined that CBCC failed to comply with Sections 9.03(B), (E), and (F) of the Harrison Township Zoning Resolution, which provide the following general standards applicable to all conditional uses:
B. The use will be designed, constructed, operated and maintained so as to be harmonious and appropriate with the existing or intended character of the general vicinity and that such use will not change the essential character of the same area.
* * *
E. The use will not involve uses, activities, processes, materials, equipment and conditions of operation that will be detrimental to any persons, property, or the general welfare by reason of excessive production of traffic, noise, smoke, fumes, glare or odors.
F. The use will be consistent with the objectives of this Zoning Resolution and *633 any adopted comprehensive plan for the area.
{¶ 37} As detailed by the common pleas court, CBCC's own testimony and exhibits supported a finding that CBCC's proposed use did not comply with Section 9.03(B) because of significant changes to the vehicular traffic and visual character of the area: CBCC expected traffic of at least 180 truck trips per day and traffic could exceed that estimate, and while CBCC planned mounds for certain areas of the sand and gravel quarry that would act as sound, site, and safety barriers, they did not plan one for the south side, which faced the Berger Health property.
{¶ 38} There was also evidentiary support for the conclusion that CBCC's proposed use violated Section 9.03(E), again in part because of the increased heavy truck traffic. And although a CBCC witness testified that fugitive dust would be watered on an as-needed basis to prevent its proliferation to nearby residences, its zoning application noted that this procedure would be available only during normal business hours. In addition, an engineer testified that another hydraulic and hydrological study was required to determine whether the quarry operation would change the upstream condition or affect the flood plain.
{¶ 39} Finally, the economic development director testified that CBCC's proposed mining would violate the North Gate development plan by disrupting traffic patterns on U.S. 23 and planned access roads that would run parallel to that road and by allowing sand and gravel mining in an area that the plan reserves for future agricultural and low-density residential use. This evidence supported the court's finding that the proposed use violated Section 9.03(F).
{¶ 40} We acknowledge that CBCC presented competing evidence that, if credited, could have established compliance with at least some of these general standards. But given our limited standard of review, which does not include the same extensive authority to weigh the evidence as the common pleas court, we are not persuaded that the common pleas court abused its discretion or that its decision is not supported by a preponderance of reliable, probative, and substantial evidence. We overrule CBCC's second assignment of error.
D. Berger Health's Cross-Appeal is Moot
{¶ 41} In Berger Health's cross-appeal, it argues that the common pleas court erred by granting CBCC's motion to strike the notebook submitted by Berger Health containing evidence and argument from the administrative record on appeal. It "requests that if this Court reverses the common pleas court's judgment on the merits, the Court also remand with instructions that the Berger Binder be included in the record." Because our affirmance of the court's judgment on the merits renders Berger Health's cross-appeal moot, we need not address it. See In re Contest of Election Held on Stark Cty. Issue 6 , 132 Ohio St.3d 98, 2012-Ohio-2091, 969 N.E.2d 1172, ¶ 21 ("Because we affirm the judgment of the common pleas court, the [appellees'] cross-appeal is moot and need not be addressed").
V. Conclusion
{¶ 42} Having overruled CBCC's assignments of error, we affirm the judgment of the common pleas court affirming the decision of the board of zoning appeals.
JUDGMENT AFFIRMED.
Abele, J. and McFarland, J.: Concur in Judgment and Opinion.