**VOGELSONG, Appellant,**

**v.**

**OHIO STATE BOARD OF PHARMACY, Appellee.**

[Cite as *Vogelsong v. Ohio State Bd. of Pharmacy* (1997), 123 Ohio App.3d 260.]

Court of Appeals of Ohio,
Fourth District, Scioto County.

No. 97CA2497.

Decided Sept. 30, 1997.

262

*Kevin L. Shoemaker,* for appellant.

*Betty D. Montgomery,* Attorney General, and *Mary L. Hollern,* Assistant Attorney General, for appellee.

———————

KLINE, Judge.

James D. Vogelsong appeals the judgment of the Scioto County Court of Common Pleas affirming his suspension by the Ohio State Board of Pharmacy ("board"). On appeal to this court, Vogelsong contends that the board's submission of a copy of an exhibit, rather than the original, to the common pleas court amounted to a failure to certify a complete record of the proceedings as required by R.C. 119.12. We disagree. Vogelsong asserts that the board's decision to suspend him without a prior hearing was not supported by the evidence. We find that this issue is moot. Vogelsong next asserts that the board lost jurisdiction to suspend him pursuant to R.C. 119.07 and 3917.121 by failing to conduct a prompt postdeprivation hearing. We disagree. Vogelsong argues that the board improperly modified the hearing officer's report. We disagree. Finally, Vogelsong argues that the common pleas court abused its discretion by finding that the board's determination that Vogelsong violated R.C. Chapter 2925 was supported by reliable, probative, and substantial evidence. We disagree. Accordingly, we affirm the judgment of the trial court.

I

On September 8, 1995, members of the Southern Ohio Drug Task Force arrested Vogelsong after examining his pharmacy records. The police officers seized postdated prescription slips from Vogelsong's pharmacy. Police officers also seized log books required to be kept by the pharmacy recording dispensed exempted narcotics. The log books indicated that five people obtained a total of

over eight hundred bottles of cough syrup with codeine from March 1992 through September 1993. The log books also indicated that seven people obtained a total of nearly nine hundred bottles of cough syrup with codeine from August 1994 through September 1995.

On September 25, 1995, the board summarily suspended Vogelsong's license to practice pharmacy without a hearing. On October 4, 1995, Vogelsong requested a hearing. The board set the matter for a hearing on October 16, 1995. However, the board twice *sua sponte* postponed the hearing, and did not hold a hearing until January 4, 1996—ninety-two days after Vogelsong requested a hearing.

At the hearing, Vogelsong argued that the board failed to conduct his postdeprivation hearing within the time limits in R.C. 119.07 and 3719.121. The hearing officer rejected Vogelsong's argument. The state presented testimony from four people who visited Vogelsong's pharmacy. Two of these people testified that Vogelsong occasionally would provide them twice the amount of drugs specified in their prescription. The other two, Jerry Binion and Cathy Meyers, testified that they were chronic purchasers of cough syrup with codeine from Vogelsong. The two often purchased cough syrup every other day. Both indicated that Vogelsong never asked them if they had a cough or advised them that the cough syrup was potentially addictive. Binion and Meyers also testified that at times Vogelsong would put the log book on the counter when they walked in the door without them even asking for cough syrup.

A pharmacist for the board testified that the sales of cough syrup to Binion and Meyers could not have been for a legitimate medical purpose. The state also introduced sections of the Physicians Desk Reference indicating that the cough syrups with codeine are potentially habit forming and that one should consult a physician if a cough persists for longer than one week.

The state presented testimony from officers who raided Vogelsong's pharmacy. The officers testified that they found prescription slips on September 8, 1995 indicating that medication was dispensed on dates after September 8, 1995, which clearly was impossible. Vogelsong did not present any evidence.

While waiting for the hearing officer to issue her report, Vogelsong filed a complaint for declaratory and injunctive relief in the Franklin County Court of Common Pleas, which was eventually denied. Meanwhile, the hearing officer issued a report and recommendation on February 26, 1996. Vogelsong filed objections. On March 7, 1996, the board issued its decision and found that Vogelsong and another pharmacist sold (1) eight hundred sixty-seven exempted narcotics to five individuals from March 19, 1992 through September 14, 1993, and (2) eight hundred ninety-three exempted narcotics to seven individuals from August 8, 1994 through September 8, 1995. The board also found that Vogelsong wrote incorrect refill dates for thirty prescriptions.

The board's findings of fact also stated, "The evidence presented in State's Exhibits 12.1 through 12.7 proved to understate the sales; however the evidence presented in the five Exempt Narcotic Books, labeled State's Exhibit 38, clearly illustrated these figures." The board's finding was identical to that of the hearing officer except for the board's use of the phrase "proved to understate the sales" instead of "proved to be inaccurate."

The board concluded that Vogelsong (1) knowingly sold a controlled substance in an amount greater than three times bulk but less than one hundred times the bulk amount when his conduct was not in accordance with R.C. Chapters 3719, 4729, and 4731, and (2) intentionally made or knowingly possessed false or forged prescriptions. The board held that Vogelsong was guilty of dishonest and unprofessional conduct in the practice of pharmacy as provided in R.C. 4729.16(A)(2). The board also held that Vogelsong was guilty of willfully violating, conspiring to violate, attempting to violate, or aiding and abetting the violation of, R.C. Chapter 2925 as provided in R.C. 4729.16(A)(5). The board indefinitely suspended Vogelsong's license, but allowed for reinstatement of the license in three years if certain conditions were met.

Vogelsong appealed the board's order to the Scioto County Court of Common Pleas. Vogelsong filed a motion asking the court to enter judgment for him because the board certified an incomplete record to the court. The court denied Vogelsong's motion and found that the order of the board was supported by reliable, probative, and substantial evidence and was in accordance with law. The court affirmed the order.

Vogelsong now appeals to this court, but has failed to assert any assignments of error. See App.R. 16(A). However, Vogelsong has listed the following five "issues presented," which we adopt as his assignments of error:

"I. Whether the Board failed to comply with the mandatory provision of R.C. 119.12 which required a finding in favor of James Vogelsong.

"II. Whether the lower court erred by finding that the summary suspension of James Vogelsong's pharmacy license was supported by reliable, probative, and substantial evidence.

"III. Whether the Board failed to conduct a prompt post-suspension hearing so that the Board's order was not in accordance with the law.

"IV. Whether the Board improperly modified the hearing officer's report so that the order is not in accordance with law.

"V. Whether the lower court erred by concluding that the Board's decision that James Vogelsong willfully violated provisions of R.C. Chapter 2925 is supported by reliable, probative, and substantial evidence."

## II

Vogelsong contends that the common pleas court erred by determining that the board's order was supported by reliable, probative, and substantial evidence and was in accordance with law. Appellate courts review a common pleas court's judgment affirming the board's order for an abuse of discretion. *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748, 750–751. But, see, *Brown v. Ohio Bur. of Emp. Serv.* (1994), 70 Ohio St.3d 1, 2, 635 N.E.2d 1230, 1231. An abuse of discretion is not merely an error of judgment, but a decision evidencing a perversity of will, passion, prejudice, partiality or moral delinquency. *Pons, supra.*

### A

In his first assignment of error, Vogelsong asserts that he was entitled to judgment in his favor because the board did not certify the complete record to the common pleas court. R.C. 119.12 provides the an agency must certify "a complete record of the proceedings in the case" to the court within thirty days after receipt of the notice of appeal. R.C. 119.12 further provides that "[f]ailure of the agency to comply within the time allowed, upon motion, shall cause the court to enter a finding in favor of the party adversely affected."

Here, a notice of appeal was filed in the common pleas court on April 2, 1996. The board certified the record to the common pleas court on April 30, 1996. However, the record provided by the board to the common pleas court contained a copy of Exhibit 38, the log books, instead of the originals.

Vogelsong made a motion for a finding in his favor, arguing that the board failed to certify a complete record by omitting the original Exhibit 38. Vogelsong argued that he needed the original Exhibit 38 to disprove allegations that he had changed some dates in the log book. The state responded that it had not provided the original log books because police officials needed to preserve the chain of custody of the log books for an ongoing investigation. The state also argued that the issue of alterations to the log book was irrelevant because the board did not make a finding on the issue and did not rely upon the allegations in suspending Vogelsong. The common pleas court denied Vogelsong's motion. We agree with the common pleas court.

In *McKenzie v. Racing Comm.* (1966), 5 Ohio St.2d 229, 34 O.O.2d 463, 215 N.E.2d 397, the Ohio Supreme Court applied a liberal construction to R.C. 119.12 and held that certified copies of a document were sufficient to complete the record. The Supreme Court has also found it important to consider whether a party has been prejudiced by shortcomings in the record when considering R.C. 119.12. See *Arlow v. Ohio Rehab. Serv. Comm.* (1986), 24 Ohio St.3d 153, 155, 24

OBR 371, 372–373, 493 N.E.2d 1337, 1339; *Lorms v. State* (1976), 48 Ohio St.2d 153, 2 O.O.3d 336, 357 N.E.2d 1067, syllabus. Therefore, we hold that a copy of an exhibit may be used to complete the record certified by the board for appeal so long as a party is not prejudiced. We find that Vogelsong was not prejudiced by use of a copy of the log books. The consideration of whether Vogelsong altered or changed dates in the log books was not at issue on appeal. Further-.more, Vogelsong does not argue that the copy of the log books submitted by the board is not accurate. Accordingly, we overrule Vogelsong's first assignment of error.

## B

Vogelsong, in his second assignment of error, argues that the board erred by summarily suspending him on September 25, 1995. R.C. 3719.121(B) provides that the board may suspend a pharmacist's license without a predeprivation hearing if it determines that there "is clear and convincing evidence that the continuation of the person's professional practice or method of distributing controlled substances presents a danger of immediate and serious harm to others." The suspended pharmacist may then request a postdeprivation hearing to contest the suspension. R.C. 119.07 and 3719.121(B).

█ The summary suspension order is removed when the board's final adjudication order becomes effective. R.C. 3719.121(B). The board's final adjudication order becomes effective and final when it is ordered on the board's journal. R.C. 119.09; *Sun Refining & Marketing Co. v. Brennan* (1987), 31 Ohio St.3d 306, 31 OBR 584, 511 N.E.2d 112, syllabus. See, generally, Civ.R. 58(A). However, the common pleas court may suspend the board's final adjudication order pending determination of an appeal. R.C. 119.12. A suspension of the board's order by the common pleas court apparently delays the effectiveness of the board's order and thus continues the summary suspension.

█ Here, the board issued its final adjudication. and indefinitely suspended Vogelsong and provided that the summary suspension was terminated on March 7, 1996. Vogelsong did not request a stay in the common pleas court and none was granted. Therefore, Vogelsong is no longer under summary suspension and his attempt to contest the summary suspension is moot. See *Fed. Deposit Ins. Corp. v. Mallen* (1988), 486 U.S. 230, 236–237, 108 S.Ct. 1780, 1786, 100 L.Ed.2d 265, 276, fn. 7. We note that the board would be wise to resolve future summary suspensions more speedily. See, generally, *id.* at 241–245, 108 S.Ct. at 1788–1789, 100 L.Ed.2d at 278–279 (statute allowing for ninety-day period between summary suspension and postsuspension decision held not to violate due process). We overrule Vogelsong's second assignment of error.

## C.

In his third assignment of error, Vogelsong contends that the board lost jurisdiction to suspend him by failing to conduct a postdeprivation hearing within one hundred five days after his request for a hearing. Vogelsong argues that R.C. 3719.121, 119.07, and his procedural due process rights provide a mandatory time period within which a postdeprivation hearing must be held. The state argues that there is no mandatory time period and the board was permitted to continue the hearings pursuant to R.C. 119.09.

R.C. 119.07 provides that a party suspended without a prior hearing "will be afforded a hearing if he requests it." R.C. 119.07 further provides that "the date set for the hearing shall be within fifteen days, but no earlier than seven days, after the party has requested a hearing unless otherwise agreed to by both the agency and the party." However, R.C. 119.09 provides that "[a]n agency may postpone or continue any adjudication hearing upon the application of any party or upon its own motion." Once a postdeprivation hearing has been held, R.C. 3719.121(B) provides that "if the board does not issue its final order within ninety days after the hearing, the suspension shall be void on the ninety-first day after the hearing."

Here, the date set by the board for the hearing was within fifteen days of Vogelsong's request. The board then twice continued the hearing, and the hearing was not held until ninety-two days after Vogelsong's request. The board issued its final adjudication sixty-two days after the hearing.

Vogelsong cites *State ex rel. Hannan v. DeCourcy* (1969), 18 Ohio St.2d 73, 47 O.O.2d 193, 247 N.E.2d 465, paragraph one of the syllabus for the proposition that the fifteen-day time limit of R.C. 119.07 is mandatory. Vogelsong then adds the ninety-day limit in R.C. 3719.121 to the fifteen-day provision in R.C. 119.07 to conclude that the board has a one-hundred-five-day time limit. We disagree.

 Courts interpreting R.C. 119.07 have distinguished *DeCourcy* by noting that R.C. 119.07 requires that the agency set a hearing date within fifteen days; R.C. 119.07 does not require the agency to hear and decide the issue within a specific time frame as in *DeCourcy*. *Korn v. Ohio State Med. Bd.* (1988), 61 Ohio App.3d 677, 683–684, 573 N.E.2d 1100, 1104–1105; *In re Barnes* (1986), 31 Ohio App.3d 201, 207–208, 31 OBR 470, 476–477, 510 N.E.2d 392, 398–399. R.C. 119.07 must be read *in pari materia* with R.C. 119.09, which permits the agency to continue a hearing. Therefore, we hold that the fifteen-day time limit in R.C. 119.07 is directory rather than mandatory for jurisdictional purposes. *Korn; In re Barnes, supra.* The board did not lose jurisdiction over Vogelsong by continuing the case pursuant to R.C. 119.09.

■ Vogelsong argues that this outcome violates his procedural due process rights. See *United States v. James Daniel Good Real Property* (1993), 510 U.S. 43, 53, 114 S.Ct. 492, 500–501, 126 L.Ed.2d 490, 503. Specifically, Vogelsong claims that a ninety-two-day period between a request for a postdeprivation hearing and the actual hearing is not the provision of a prompt hearing. Vogelsong's contentions focus on the constitutionality of the summary suspension, which the board has terminated; Vogelsong does not contest the constitutionality of the board's final order. As in Part II(B), *supra*, we find that Vogelsong's argument regarding the summary suspension is moot. See *Fed. Deposit Ins. Corp. v. Mallen*, 486 U.S. 230, 108 S.Ct. 1780, 100 L.Ed.2d 265. Accordingly, we overrule Vogelsong's third assignment of error.

### D

■ In his fourth assignment of error, Vogelsong asserts that the board improperly modified the hearing officer's report in violation of R.C. 119.09. An agency may modify a recommendation of a hearing officer if the agency includes the reasons for the change in the record of the proceedings. R.C. 119.09. See *W. Virginia v. Hazardous Waste Facility Approval Bd.* (1986), 28 Ohio St.3d 83, 86–87, 28 OBR 179, 182–183, 502 N.E.2d 625, 629–631.

■ Vogelsong objects to the board's use of the phrase "proved to understate the sales" in the board's finding that "[t]he evidence presented in State's Exhibits 12.1 through 12.7 proved to understate the sales; however, the evidence presented in the five Exempt Narcotic Books, labeled State's Exhibit 38, clearly illustrated these figures." The hearing officer had used the phrase "proved to be inaccurate."

Vogelsong argues that the board did not specify on the record the reasons for the modification. The state argues that the modification by the board is self-explanatory. We agree with the state. The board clarified the nature of the inaccuracy in State's Exhibits 12.1 through 12.7 when the board substituted the phrase "proved to understate the sales" for the phrase "proved to be inaccurate." Accordingly, we overrule Vogelsong's fourth assignment of error.

### E

In his final assignment of error, Vogelsong appears to argue that the trial court abused its discretion in finding that reliable, probative, and substantial evidence supported the board's finding that Vogelsong violated R.C. 2925.03(A)(7). The board found that Vogelsong knowingly sold a controlled substance in an amount greater than three times the bulk amount but less than one hundred times the bulk amount when his conduct was not in accordance with R.C. Chapters 3719,

4729, and 4731. See R.C. 2925.03(A)(7) and (B)(1). Vogelsong argues that he did not willfully violate this section because he believed he was acting in compliance with R.C. Chapter 3719. We note that Vogelsong does not contest the board's findings regarding false or forged prescriptions.

The state argues that Vogelsong's conduct was not in accordance with R.C. Chapter 3719 when he dispensed exempted narcotics. The state contends that Vogelsong violated R.C. 3719.15, which provides:

"Except as specifically provided in Chapter 2925. and 3719. of the Revised Code, such chapters shall not apply to the following cases:

"(A) Where a practitioner administers or dispenses; or where a pharmacist or owner of a pharmacy sells at retail any medicinal preparation that contains in one fluid ounce, or if a solid or semi-solid preparation, in one avoirdupois ounce:

"* * * *

"(3) Not more than one grain of codeine or any of its salts;

"* * *

"(B) * * *

"The medicinal preparation * * * shall be prescribed, administered, compounded, dispensed, and sold *in good faith as medicine, and not for the purpose of evading such sections.*" (Emphasis added.)

Vogelsong first appears to argue that one who dispenses over one thousand six hundred bottles of cough syrup with codeine to seven people over a twenty-eight-month period does not violate R.C. 3719.15. We disagree. We find that the exorbitant dispensation of a potentially habit-forming narcotic is not the dispensing of a medicinal preparation in good faith as medicine. Moreover, the board found that Vogelsong's conduct violated R.C. 3719.15 and we must give due deference to the board's interpretation of technical and ethical requirement's. See *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 614 N.E.2d 748, at syllabus.

Vogelsong next appears to argue that he had no knowledge that exorbitant dispensation of a potentially habit-forming narcotic violated R.C. 3719.15. Vogelsong therefore argues that there was no evidence before the board to demonstrate that he willfully intended to dispense the drugs for the purpose of evading such sections. The state argues that the board correctly inferred from the sheer volume of the dispensations that Vogelsong willfully dispensed cough syrup with codeine the purpose of evading the sections, rather than in good faith as medicine.

We find that the trial court did not abuse its discretion in finding that the board's finding was supported by reliable, probative, and substantial evidence.

The board could infer Vogelsong's intent to violate R.C. 3719.15, and therefore R.C. 2925.03(A)(7), from the incredible volume of dispensations of cough syrup with codeine to seven people over a twenty-eight-month period. Accordingly, we overrule Vogelsong's fifth assignment of error.

## III

In conclusion, we overrule all of Vogelsong's assignments of error and affirm the judgment of the trial court.

*Judgment affirmed.*

STEPHENSON, J., concurs.

HARSHA, J., concurs in part and dissents in part.

HARSHA, Judge, concurring in part and dissenting in part.

I concur with the majority in all regards except one. The board denied appellant credit against his three-year license suspension for the time his license was temporarily suspended under the prehearing order. To allow the board to summarily suspend the appellant's license without a hearing, and then to continue the hearing on the final suspension for ninety-two days after he requested a hearing, while denying credit for the temporary suspension violates appellant's right to due process of law. Thus, I dissent from affirming the trial court *in toto*.