[Cite as *Brisker v. Ohio Dept. of Ins.*, 2021-Ohio-3141.]

**Released 09/03/21**

# FOURTH APPELLATE DISTRICT
## SCIOTO COUNTY

|                        |   |                          |
|------------------------|---|--------------------------|
| FREDERICK BRISKER,     | : |                          |
|                        | : |                          |
|   Plaintiff-Appellant, | : | Case No. 20CA3925 |
|                        | : |                          |
| v.                     | : |                          |
|                        | : |                          |
| OHIO DEPARTMENT OF     | : | <u>DECISION AND JUDGMENT</u> |
| INSURANCE,             | : | <u>ENTRY</u>             |
|                        | : |                          |
|   Defendant-Appellee. | : |                  |

<u>APPEARANCES</u>:

John A. Izzo, Graff & McGovern, LPA, Columbus, Ohio, and Michael H. Mearan, Portsmouth, Ohio, for Appellant.

Dave Yost, Ohio Attorney General, Crystal R. Richie, Principal Assistant Attorney General, Health and Human Services Section, for Appellee.

_____

PER CURIAM.

{¶1} Frederick Brisker appeals the August 4, 2020 judgment entry of the Scioto County Court of Common Pleas which affirmed the Ohio Department of Insurance's order revoking his insurance license. Having reviewed the record, we find Mr. Brisker's assignments of error lack merit and are hereby overruled. Thus, we affirm the judgment of the trial court.

## FACTS

{¶2} Frederick Brisker, "Appellant," an independent insurance broker licensed since 1976, owns Fred Brisker Financial Advisors. He sold stocks, bonds, and annuities through his insurance business in Portsmouth, Ohio. Appellant had business relationships with Midland National Life Insurance Company, "MNLIC," and Parkland Securities, "Parkland."

{¶3} In 2019, Appellant was notified that the Ohio Department of Insurance, the "Department," had conducted an investigation of his activities and had concluded that he was not suitable to be licensed as an insurance agent in the State of Ohio due to two violations of R.C. 3905.14(B). Appellant was alleged to have impersonated an insured in the conduct of his insurance business, a violation of R.C. 3905.14(B)(9). Appellant was also alleged to have submitted a forged document in the conduct of his insurance business, a violation of R.C. 3905.14(B)(26). Appellant was provided notice of opportunity for a hearing on the matter.

{¶4} The Department eventually conducted its administrative hearing regarding the two allegations on August 14, 2019. Carrie Roe, John Murphy, Angel Bowers, Appellant, and several character witnesses on Appellant's behalf testified. At the beginning of the hearing, Appellant stipulated to one of the violations, impersonating one of his clients, Edwin Dyer.

{¶5} Regarding the allegation that Appellant submitted a forged document, Carrie Roe testified she worked for Appellant from 2009 to 2018 as his office manager and assistant. She resigned from Appellant's employment on good terms. Ms. Roe identified State's Exhibit D, an employment verification form submitted in support of Appellant's disability claim.[1] The form indicates it is from UNUM.[2] The form contains four pages of requested general information as to Appellant's employment, including work hours, travel required, job duties, and various occupational requirements. The answers to the questions on the form are printed in the blanks provided. The first page of the form demonstrates it is addressed to "Jack Murphy" at Appellant's business address. The last page of the form required a signature and phone number. The name "Jack Murphy" is handwritten on the signature line and is printed on the line below.

{¶6} Roe testified that while she was employed by Appellant she received a call from John Murphy requesting a copy of Exhibit D, the employment verification form. John Murphy is a regional sales director employed by MNLIC. Roe found an original on Appellant's desk. Roe also found a fax confirmation form. As Roe reviewed Exhibit D, she testified that the printing appeared to be Appellant's. Ms. Roe also testified that on

[1]Appellant claimed disability as a result of a 2016 car accident.
[2]According to UNUM's website, it is a Fortune 500 international company, helping customers gain access to, among other benefits, disability benefits. *See* https://careers.unum/global/en.

the day she returned Appellant's office keys, Appellant advised that he had been terminated from Parkland because of "the form that he signed Jack's name to." On cross-examination, Ms. Roe acknowledged that she now works for one of Appellant's competitors.

{¶7} John Murphy testified his nickname is "Jack." Mr. Murphy also identified Exhibit D. Mr. Murphy testified he first learned of Exhibit D when he was contacted by UNUM. UNUM's representative wanted to ask him questions about the form he had submitted in support of Appellant's disability claim. Murphy testified he knew nothing about this form at the time he was contacted by UNUM.

{¶8} Murphy testified that thereafter, he contacted Appellant's office, spoke with Carrie Roe, and requested a copy of the form. When he received Roe's fax, he noticed his name was forged on the document. Murphy denied signing the form, supervising Appellant, or ever using Appellant's address or phone. Earlier, Roe had also testified that Mr. Murphy never worked from Appellant's office. Murphy testified he had known Appellant for 15 years and the printing on the claim form looked like Appellant's printing.[3]

{¶9} Angel Bowers testified she is employed as an investigator with the Department. She received information that Appellant was terminated

---

[3]Murphy further testified that by coincidence, the day he received the form, he had a compliance review. He showed the form to his compliance officer and the compliance department. About a week later in March 2018, Parkland terminated Appellant.

from Parkland due to the employment verification form. She also learned about the impersonation from MNLIC. Bowers obtained a recording of the impersonation phone call. Ms. Bowers testified that she interviewed Edwin Dyer. Mr. Dyer told her that he gave Appellant permission to request information but not to impersonate him. She characterized Mr. Dyer as being "concerned" about the impersonation.

{¶10} Ms. Bowers interviewed Appellant in February 2019. Appellant initially denied making the phone call. After the recorded impersonation phone call was played, Appellant apologized and said he did not recall making the call.

{¶11} Appellant testified his clients, Edwin and Susan Dyer, lived a distance of six hours away from his insurance office. They were having difficulty getting information from MNLIC so they authorized him to contact the company on their behalf. Appellant was getting ready to see the Dyers for a yearly review and needed to have full information from MNLIC before traveling six hours to meet them. Although admitting the impersonation, Appellant viewed it as for a laudable purpose—fulfilling his obligation to assist his clients.

{¶12} Appellant also admitted Mr. Murphy never worked for him.[4] As to Exhibit D, the claim form, Appellant admitted the hand printing on the form was his, but he denied signing Mr. Murphy's name to the last page. Appellant testified he did not know how the claim form reached UNUM. Appellant did not recall telling Ms. Roe he signed Mr. Murphy's name. UNUM ultimately paid Appellant $60,000 in disability benefits.

{¶13} The following Department's exhibits were admitted into evidence: Exhibit A, the Notice of Opportunity for Hearing; Exhibit B, Appellant's request for a hearing; Exhibit C, Notice and Order to Continue Formal Hearing; and Exhibit D, documents from Parkland which contained the forged disability claim form; Exhibit E, affidavit from Ethan Jones; and Exhibit F, messages on a CD.[5] Appellant's exhibits admitted into evidence were: Exhibit 1, affidavit of Edwin Dyer; Exhibit 2, affidavit of Susan Dyer; Exhibit 3, Affidavit of Curt Baggett; and Exhibit 4, summary of cases reviewed by Mr. Baggett. Generally, the Dyers averred that they would continue to use Appellant's services.

{¶14} After hearing the testimony and reviewing the exhibits, the hearing officer found impersonation was proven through the testimony and

---

[4]Murphy testified that although one of his job duties was recruiting agents for MNLIC, he did not recruit Appellant. Appellant was already working as an agent when Murphy became employed with MNLIC. They typically saw each other four times a year at meetings.

[5]Ethan Jones' affidavit averred that he worked for MNLIC and actually received the phone call from Appellant pretending to be a client, Edwin Dyer. Jones immediately recognized Appellant's voice.

exhibits, as well as admitted by Appellant.  The hearing officer also found

forgery was proven through the testimony and exhibits.  On December 20,

2019, the Superintendent of the Department adopted the report and

recommendation of the administrative hearing officer and issued an order

revoking Appellant's insurance license.

{¶15} This administrative appeal was filed on December 27, 2019.

On January 28, 2020, the parties through counsel agreed to have a complete

record of proceedings filed under seal.  The court issued a scheduling order,

and the matter was set for oral hearing on April 10, 2020.

{¶16} Appellant filed his brief on February 28, 2020.  The Department filed

its brief on March 30, 2020.  Appellant filed a reply brief on April 6, 2020.  On

August 4, 2020, the trial court filed its judgment entry affirming the Department's

order.[6]  This timely appeal followed.

{¶17} In this appeal, Appellant argues that the common pleas court abused

its discretion in finding that the order was based on reliable, probative, and

substantial evidence and in accordance with the law.  Appellant requests that his

license be reinstated.

ASSIGNMENTS OF ERROR

---

[6]Appellant has moved the common pleas court and this Court for a stay of enforcement of the Department's order revoking his insurance license pending the outcome of the proceedings.  Appellant has argued he would suffer an unusual hardship if the order was not stayed.  At all times, the Department has opposed Appellant's motions. This court and the common pleas court have denied these motions and have also denied Appellant's subsequent motions for reconsideration.

I.      THE COMMON PLEAS COURT ABUSED ITS DISCRETION WHEN IT DETERMINED THE DEPARTMENT'S ORDER WAS BASED UPON RELIABLE, PROBATIVE, AND SUBSTANTIAL EVIDENCE.

II.     THE COMMON PLEAS COURT ABUSED ITS DISCRETION WHEN IT DETERMINED THE DEPARTMENT'S ORDER WAS IN ACCORDANCE WITH LAW.

### A. STANDARD OF REVIEW

{¶18} In a R.C. 119.12 administrative appeal, a common pleas court must affirm the agency's decision if it is supported by "reliable, probative, and substantial evidence and is in accordance with law." *See Hinton Adult Care Facility v. Ohio Department of Mental Health and Addiction Services,* 4th Dist., Ross No.16CA3566, 2017-Ohio-4113, at ¶ 17. *See also, Pons v. Ohio State Med. Bd.,* 66 Ohio St.3d 619, 621, 614 N.E.2d 748 (1993); *In re Williams,* 60 Ohio St.3d 85, 86, 573 N.E.2d 638 (1991).  " 'Reliable' evidence is dependable or trustworthy; 'probative' evidence tends to prove the issue in question and is relevant to the issue presented; and 'substantial' evidence carries some weight or value." *Hinton, supra,* quoting *Ohio Civ. Rights Comm. v. Case W. Res. Univ.,* 76 Ohio St.3d 168, 178, 666 N.E.2d 1376 (1996), citing *Our Place, Inc. v. Ohio Liquor Control Comm.,* 63 Ohio St.3d 570, 571, 589 N.E.2d 1303 (1992).  Thus, when a common pleas court reviews the agency's finding, it must "appraise all the evidence * * * 'and, if

from such a consideration it finds that the * * * [agency's] order is not supported by reliable, probative, and substantial evidence and is not in accordance with law, the court is authorized to reverse, vacate, or modify the order * * *.' " *See Hinton, supra,* at ¶ 18, quoting *Univ. of Cincinnati v. Conrad,* 63 Ohio St.2d 108, 110, 407 N.E.2d 1265 (1980), quoting *Andrews v. Bd. of Liquor Control,* 164 Ohio St. 275, 131 N.E.2d 390 (1955), paragraph one of the syllabus.

> [W]hether an agency order is supported by reliable, probative and substantial evidence essentially is a question of the absence or presence of the requisite quantum of evidence. Although this in essence is a legal question, inevitably it involves a consideration of the evidence, and to a limited extent would permit a substitution of judgment by the reviewing Common Pleas Court.

*Id*. at 111. Furthermore, while "a Court of Common Pleas 'must give due deference to the administrative resolution of evidentiary conflicts,' [*id*.], [d]ue deference * * * does not contemplate uncritical acquiescence to administrative findings." *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.,* 66 Ohio St.2d 192, 200, 421 N.E.2d 128 (1981).

{¶19} Although a common pleas court may not try the issues de novo or substitute its judgment for the administrative agency, *see Kisil v. Sandusky,* 12 Ohio St.3d 30, 34, 465 N.E.2d 848 (1984), and *Conrad* at 110, it may decide purely legal questions de novo. *See Hinton, supra,* at ¶19. *See also Ohio*

*Historical Soc. v. State Emp. Relations Bd.,* 66 Ohio St.3d 466, 470-471, 613

N.E.2d 591 (1993); *Joudah v. Ohio Dept. of Human Servs.,* 94 Ohio App.3d 614,

616-617, 641 N.E.2d 288 (9th Dist.1994). Thus, "[t]o the extent that an agency's

decision is based on construction of the state or federal Constitution, a statute, or

case law, the common pleas court must undertake its R.C. 119.12 reviewing task

completly independently." *Ohio Historical Soc.* at 471.

{¶20} In contrast to the common pleas court's standard of review, an

appellate court's review of an administrative agency's order is more limited. *See*

*Hinton,* at ¶ 19; *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.,*

40 Ohio St.3d 257, 260-261, 533 N.E.2d 264 (1988). It is incumbent on a common

pleas court to examine the evidence. *See Pons,* 66 Ohio St.3d at 621, 614 N.E.2d

748. Such is not the charge of an appellate court. *Id.* Instead, an appellate court

must determine whether the trial court has abused its discretion. *Id.* Thus, absent

an abuse of discretion on the part of the trial court, a court of appeals must affirm

the trial court's judgment. *See id.* An abuse of discretion constitutes more than an

error of law or judgment; rather, it implies that the trial court's attitude was

unreasonable, arbitrary, or unconscionable. *See, e.g., Landis v. Grange Mut. Ins.*

*Co.,* 82 Ohio St.3d 339, 342, 695 N.E.2d 1140 (1998); *Malone v. Courtyard by*

*Marriott L.P.,* 74 Ohio St.3d 440, 448, 659 N.E.2d 1242 (1996).

{¶21} Additionally, an appellate court must not substitute its judgment for that of an administrative agency or a common pleas court. *See Hinton*, at ¶ 20; *Pons,* 66 Ohio St.3d at 621, 614 N.E.2d 748. The fact that the court of appeals might have arrived at a different conclusion than did the administrative agency is immaterial. "With respect to purely legal questions, however, the court is to exercise independent judgment." *VFW Post 8586 v. Ohio Liquor Control Comm.,* 83 Ohio St.3d 79, 82, 697 N.E.2d 655 (1998); *see also Nye v. Ohio Bd. of Examiners of Architects,* 165 Ohio App.3d 502, 2006-Ohio-948, 847 N.E.2d 46, ¶ 11 (10th Dist.) (stating that appellate court has plenary review of legal questions).

## B. LEGAL ANALYSIS

{¶22} R.C. 119.09 governs adjudication hearings. The statute provides in pertinent part:

> In any adjudication hearing required by sections 119.01 to 119.13 of the Revised Code, the agency may appoint a referee or examiner to conduct the hearing. The referee or examiner shall have the same powers and authority in conducting the hearing as is granted to the agency. * * * The referee or examiner shall submit to the agency a written report setting forth the referee's or examiner's findings of fact and conclusions of law and a recommendation of the action to be taken by the agency.

{¶23} R.C. 119.09 provides that at the adjudicatory hearing:

> The agency shall pass upon the admissibility of evidence, but a party may at the time make objection to the rulings of the agency thereon, and if the agency refuses to admit evidence, the

party offering the same shall make a proffer thereof, and such proffer shall be made a part of the record of such hearing.

{¶24} It is apparent from the statute that the requirement that an agency "pass" on the evidence means that the agency must determine what evidence is admissible at the hearing. *See Katz v. Ohio Dept. of Ins.,* 8th Dist. Cuyahoga No. 80802, 2002-Ohio-3905, at ¶ 19. The requirement relates to a determination of the admissibility of the evidence and not to a consideration of the weight of the evidence in rendering a decision. *Id.* To aid in our analysis of the first assignment of error, we also observe the Supreme Court of Ohio has held that " 'Evid.R. 101(A) does not mention administrative agencies as forums to which the Rules of Evidence apply.' " *Robinson v. Springfield Local School Dist. Bd. Of Educ.*, 144 Ohio App.3d 38, 48, 759 N.E.2d 444, (9th Dist.), quoting *Orange City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 74 Ohio St.3d 415, 417, 659 N.E.2d 1223, 1224 (1995). The rules of evidence, including the hearsay rule, do not control administrative hearings, but the agency may consult the rules for guidance. *See Healthsouth v. Testa,* 132 Ohio St. 3d 55, 2012-Ohio-1871, 969 N.E.2d 232, at ¶ 13; Evid.R. 101(A); *Plain Local Schools v. Franklin Cty. Bd. of Revision,* 130 Ohio St.3d 230, 2011-Ohio-3362, 957 N.E.2d 268, ¶ 20.

I.  THE COMMON PLEAS COURT ABUSED ITS

DISCRETION WHEN IT DETERMINED THE DEPARTMENT'S ORDER WAS BASED UPON RELIABLE, PROBATIVE, AND SUBSTANTIAL EVIDENCE.

a. Did the Department prove a violation of R.C. 3905.14(B)(26)?

{¶25} Appellant argues that Exhibit D, the forged document, was not submitted or used in the conduct of Appellant's insurance business because it concerned only his personal claim and because it was not faxed from his office. Further, Appellant argues that no evidence presented indicated Appellant knew or should have known Exhibit D contained a forged signature. Appellant argues that evidence demonstrates only that Exhibit D was submitted by his attorney's office.

{¶26} The trial court's decision cited the hearing transcript. Carrie Roe testified Appellant told her he had been terminated from Parkland "over the form he signed Jack's name to." On cross-examination, Appellant did not recall this conversation with Roe. Additionally, Angel Bowers testified that she learned from Parkland's investigation that Appellant admitted that he may have signed the form in order to "speed up the process." By contrast, Appellant testified that he did not recall making this statement to Parkland's representative.

{¶27} In this case, the trial court gave due deference to the hearing

officer's resolution of evidentiary conflicts. The trial court's decision found the agency's order to be supported by reliable, probative, and substantial evidence. We decline to substitute the agency's or the trial court's judgment for our own. Based upon our own review of the evidence presented at the administrative hearing, we find the trial court did not abuse its discretion in affirming the agency's order.

b. Did the hearing officer properly analyze the R.C. 3905.14(E) factors when considering Appellant's sanction?

{¶28} Appellant asserts that the hearing officer did not properly analyze the R.C. 3905.14(E) factors and therefore the report was flawed. The Department responds that the hearing officer's report and recommendation consists of four pages of analysis, impartially addressing each of the twelve R.C. 3905.14(E) factors. In the common pleas court's decision, the court noted that the hearing officer relied upon evidence presented at the hearing, drew reasonable conclusions from the evidence, and construed the various factors for or against Appellant. Based upon our review of evidence presented at the hearing and the hearing officer's report, we agree with the Department.

First factor - Whether the Person Acted in Good Faith.

{¶29} Appellant disputes the hearing officer's determination that Appellant did not act in good faith and asserts that his impersonation of Mr.

Dyer was only to help the Dyers and was not for Appellant's own personal gain. Black's Law Dictionary, Abridged Sixth Edition, 1991, defines good faith, in common usage, as "that state of mind denoting honesty of purpose, freedom from intention to defraud, and, generally speaking, * * * being faithful to one's obligation." While, arguably, Appellant was attempting to fulfill an obligation to the Dyers, he was not honest in doing so.

{¶30} Furthermore, while Appellant claims that he "took ownership" of his act when he heard the telephone recording and remembered what he had done, we disagree. The evidence demonstrates Appellant initially denied impersonating his client and made no admission until after the recorded call was played for him. Similarly, Appellant denied knowing about the forged signature on his disability claim form while Carrie Roe's testimony provided contrary evidence. We agree with the hearing officer that these actions do not demonstrate good faith.

Second factor - The Actual or Potential for Harm to Others.

{¶31} The hearing officer's report indicated "it is unclear of the direct harm done, but the indirect harm is clients potentially not being able to trust an insurance agent." Appellant provided contrary evidence indicating the Dyers' intent to continue to use Appellant's services. Appellant further disputes the hearing officer's comment that it was "unclear" as to how the

forged signature concerning Appellant's own disability claim affected the application.

{¶32} In our view, while the Dyers may trust Appellant, his other clients or potential clients may not. Furthermore, Appellant received a $60,000.00 payment on his disability claim, supported by a forged document. While the hearing officer commented only that the potential harm was indirect and unclear, there is legitimate concern of actual and potential harm to others.

> Fourth factor - The Degree of Trust Placed in the Person by, and the Vulnerability of, Persons Who Were or Could Have Been Adversely Affected by the Person's Actions.

{¶33} The hearing officer wrote in the report that Brisker was acting as an agent when he committed both violations, without further elaboration. Again, Appellant admitted the impersonation. The hearing officer concluded that Appellant knew or should have known about the forgery, based on her resolution of the conflicting evidence. These acts are dishonest. In *Vogelsong v. Ohio State Bd. of Pharmacy,* 123 Ohio App. 3d 260, 269, 704 N.E.2d 28 (4th Dist. 1997), this Court noted that some acts are self-explanatory. *See also, Workman v. Ohio Dept. of Ins.,* 5th Dist. Richland No. 2012-CA-21, 2012-Ohio-4809, at ¶ 23. It should also be self-

explanatory that such acts would affect the degree of trust others place in

Appellant.

> Sixth factor - The Number of Individuals Adversely Affected by the Person's Acts or Omissions.

{¶34} Our review of the evidence before the hearing officer suggests

three people were affected by Appellant's actions. At the least, neither the

Dyers nor John Murphy likely enjoyed being part of the Department's

investigations. Moreover, Murphy, himself a regional sales director in the

insurance industry, was likely unhappy to find his name provided on a

forged document. In the report, the hearing officer discussed the evidence

that these three people were adversely affected.

> Seventh factor - Whether the Person Voluntarily Reported the Violation and the Extent of the Person's Cooperation and Acceptance of Responsibility.

{¶35} While Appellant claims that the hearing officer had no basis to

conclude that impersonating a client over the phone should be a "significant

recollection," the Department responds that the following facts are not in

dispute: (1) Appellant did not voluntarily report his violations; (2) he

admitted his actions at the hearing; (3) he failed to take ownership of his

actions during the investigation interview which occurred only two months

after the impersonation occurred and yet claimed memory loss. Based on

our review of the record, as found by the hearing officer and the common

pleas court, we find no documented expert medical evidence of memory loss. Furthermore, we find it is difficult to construe Appellant's actions as voluntary reporting and the fullest cooperation and acceptance of responsibility.

    Tenth factor - Remedial Efforts to Prevent Future Violations.

{¶36} We agree with the Department's characterization that a person stating he or she "will not do it again" does not constitute a remedial effort. The hearing officer found this statement to be an "unclear" remedial effort.

    Twelfth factor - Such Other Factors as the Superintendent/Department Determines to be Appropriate Under the Circumstances.

{¶37} Appellant asserts his memory loss was not addressed or fully considered. However, the report demonstrates otherwise. The witness testimony was conflicting but the report indicates Appellant was not diagnosed with memory impairment issues and is not on medication for said issues.

{¶38} Our review of the hearing officer's discussion of the factors is set forth above. Additionally, the hearing officer noted the factors which were favorable to Appellant as well as his record of community service and character recommendations. However, just because the hearing officer did not balance the factors more favorably to Appellant does not indicate improper analysis.

{¶39} Based upon the foregoing, we find no merit to Appellant's first assignment of error. Our review indicates the Department's order was based upon reliable, probable, and substantial evidence. Thus, the trial court did not abuse its discretion in finding the R.C. 3905.14(B)(26) violation, forgery, was proven. Furthermore, the common pleas court also did not abuse its discretion in finding the hearing officer properly analyzed the R.C. 3905.14(E) factors when considering Appellant's sanction. Accordingly, the first assignment of error is hereby overruled.

II.    THE LOWER COURT ABUSED ITS DISCRETION WHEN IT FOUND THAT THE DEPARTMENT'S ORDER WAS IN ACCORDANCE WITH LAW.

{¶40} Appellant's second assignment of error raises several due process concerns. In civil proceedings, due process requires notice and a meaningful opportunity to be heard. *See Farm Supply Center, Inc. V. Pelanda,* 5th Dist. Muskingum No. CT2020-0039, 2021-Ohio-741, at ¶ 20; *State v. Hayden,* 96 Ohio St.3d 211, 773 N.E.2d 502 (2002); *Shell v. Shell,* 5th Dist. Stark No. 2010CA00026, 2010-Ohio-5813, citing *Matthews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893 (1976). "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and

afford them an opportunity to present their objections." *Howard v. Ohio State Racing Comm.,* 2019-Ohio-4013, 145 N.E.3d 1254 at ¶ 26 (10th Dist. 2019); *Mullane v. Cent. Hanover Bank & Trust Co.,* 70 S. Ct. 652, 339 U.S. 306, 314 (1950). " ' " The right to a hearing embraces not only the right to present evidence, but also a reasonable opportunity to know the claims of the opposing party and to meet them." ' " *Payton v. Ohio Dept. of Ins.,* 8th Dist. Cuyahoga No. 98330, 2012-Ohio-4826, at ¶ 22; quoting *Althof v. Ohio State Bd. Of Psychology,* 10th Dist. Franklin No. 09AP-1169, 2007-Ohio-1010, at ¶19; quoting *Gonzales v. United States,* 75 S. Ct. 409, 348 U.S. 407, 414, fn. 5 (1955). Procedural due process is not a technical concept but, rather, concerns fundamental fairness. *See Gross v. State Med. Bd. of Ohio,* 10th Dist. No. 08AP-437, 2008-Ohio-6826, at ¶ 20.

<u>a. The hearing officer's failure to admit Exhibits 3 and 4.</u>

{¶41} Appellant challenges the hearing officer's refusal to admit his proffered Exhibits 3 and 4.[7] Appellant emphasizes that John Murphy, the Department's witness, gave lay testimony that "it looked like [Appellant] signed his name to the document." Therefore, Appellant should have been allowed to refute the allegation by using Exhibits 3 and 4, respectively, the

---

[7]The hearing transcript reflects that the hearing officer stated she would not consider Exhibits 3 and 4 but she would "attach" and "allow" them in case there was an appeal.

affidavit of Curt Baggett, a handwriting expert, and a summary of the cases

in which he had rendered expert opinions.  We disagree.

{¶42} As indicated above, the hearing officer has the discretion to

resolve evidentiary conflicts.  The hearing officer may look to the

evidentiary rules for guidance.  The record demonstrates the hearing officer

made a distinction between affidavits from fact witnesses and affidavits

from expert witnesses and reasoned that an affidavit from an expert without

the ability to cross-examine would be inappropriate.  The hearing officer

allowed Appellant to submit two affidavits from fact witnesses and refused

to allow the affidavit from the expert witnesses.  Even if the hearing officer

had allowed the exhibits, she would be free to believe or disbelieve their

contents.  Based upon our review, we find Appellant was not denied due

process due to the failure to admit Exhibits 3 and 4.

b. <u>The alleged inconsistency of Appellant's penalty by revoking his
   license.</u>

{¶43} Appellant points out that R.C. 3905.14(B) is permissive.  The

superintendent "may" suspend or revoke any license of an insurance agent.

Appellant directs our attention to past instances in which the Superintendent

of Insurance has *not* revoked an agent's license for impersonating a

consumer to an insurance company and it is therefore not a consistent

penalty.  Further, Appellant emphasizes the R.C. 3905.14(E) factors

favorable to him: (1) that there was no pecuniary loss in his case; (2) that he had not previously been the subject of an administrative action; (3) that he took ownership of his actions; (4) that he did not obstruct or impede the Department's investigation; (5) that he did not try to conceal his misconduct; and (6) that he has no criminal convictions. Appellant concludes that upon considering all of the above, the superintendent should not have concluded that revocation of his license was the appropriate sanction.

{¶44} As noted above, R.C. 3905.14 (E) provides that the superintendent may consider various factors in denying a license, imposing suspensions, revocations, fines, or other penalties, and issuing orders. By using the term "may," the General Assembly has given the superintendent discretion to apply mitigating factors. *Peterson v. Ohio Department of Ins.*, 162 Ohio App.3d 407, 2005-Ohio-4002, 833 N.E.2d. 798, 801 (8th Dist.). If the General Assembly wanted to require the superintendent to consider mitigating factors before imposing an order, the statute would have been drafted to reflect that desire. R.C. 3905.49(E) is clear and does not require the superintendent to consider mitigating factors before imposing an order.[8] *Id.* The pertinent factors for consideration have been discussed at length above.

[8]The Ohio legislature recodified and renumbered R.C. 3905.49(E) as R.C. 3905.14(E). Both the previous and newly recodified statutes are identical in all respects. *See Peterson v. Ohio Dept. of Ins.,* 162 Ohio App.3d 407, 2005-Ohio-4002, 833 N.E.3d 798, at fn 1 (8th Dist.).

{¶45} We find no merit to Appellant's argument.  The Department considers all enforcement matters on a case by case basis, after reviewing the evidence.  There is nothing that prohibits the Department from imposing different sanctions upon individuals found in violation of similar provisions of the statute.  Our own review of the cases emphasized by Appellant indicates most of the other individuals entered consent orders.  Nevertheless, in this case, the Department's order indicates that the hearing officer considered all the factors.  The hearing officer's report discusses each factor, construing some for and some against Appellant.

{¶46} Even if we found Appellant's argument concerning his sanction to be valid, nothing raised herein has constituted reversible error.  The trial court found that the Department's order was supported by reliable, probative, and substantial evidence.  We have found no abuse of the trial court's discretion in so finding.  Under Ohio law, if the common pleas court concludes that an order is supported by reliable, probative, and substantial evidence, the court is then precluded from modifying the penalty imposed if the penalty was authorized by law.  *See Angerbauer v. State Medical Board*, 2017-Ohio-7420, 96 N.E.3d 1100, at ¶ 46 (10th Dist.), citing *Demint v. State Med. Bd.,* 2016-Ohio-3531, 70 N.E.3d 21, ¶ 63, (10th Dist.), cit*ing Henry's Café, Inc., v. Bd. Of Liquor Control,* 170 Ohio St. 233, 163 N.E.2d 678

(1959), paragraphs two and three of the syllabus.  *See also, Zollinger v. Ohio State Racing Comm.,* 1133 Ohio App. 3d 708, 714, 729 N.E.2d 808 (4th Dist. 1999).  Appellant's sanction was within the statutory authority.  We find the common pleas court did not abuse its discretion when it found no denial of due process with regard to the Department's order to revoke Appellant's license.

   c.  <u>The Department failed to comply with R.C. 119.09 with regard to the issuance of the order.</u>

{¶47} Concerning the Department's order revoking his license, Appellant directs us to R.C. 119.09, in pertinent part:

> After such order is entered on its journal, the agency shall serve by certified mail, return receipt requested, upon the party affected thereby, a certified copy of the order and a statement of the time and method by which an appeal may be perfected.  A copy of such order shall be mailed to the attorneys or other representatives of record representing the party.

{¶48} Appellant asserts that despite the above requirements, the Department did not mail a copy of the order to Appellant's attorney until December 24, 2019, four days after the order was purportedly mailed to Appellant.  Based on the record, this appears to be accurate.

{¶49} According to Appellant's interpretation, the statute clearly reads that the order is to be mailed to the respondent as well as his or her attorneys or other representatives of record at the same time—not four days

apart.  Appellant argues that the word "shall" is mandatory and the order must be mailed to a party and his representative at the same time.  Appellant also cites R.C. 119.07, which states in part that "[t]he failure of an agency to give the notice for any hearing required by sections 119.01 to 119.13 of the Revised Code in the manner provided in this section shall invalidate any order entered pursuant to the hearing."  We observe that in *Hughes v. Ohio Department of Commerce,* 114 Ohio St. 3d 47, 2007-Ohio-2877, 868 N.E.2d 246, the Supreme Court of Ohio found that there must be strict compliance with Chapter 119 in the administrative hearing process.  *Id*. at ¶ 19.

{¶50} Appellant in essence asks us to interpret the meaning of the statute.  " 'A court's primary goal when determining the meaning of "a statute is to give effect to the legislature's intent.' "  *See Saber Health Care v. Ohio Dept. of Job and Family Services.,* 4th Dist. Adams No. 20CA1107, 2020-Ohio-4044, at ¶ 19, quoting *State v. Bryant,* 160 Ohio St.3d 113, 2020-Ohio-1041, 154 N.E.3d 31, ¶ 12.  " ' "To discern legislative intent, we first consider the statutory language, reading all words and phrases in context and in accordance with rules of grammar and common usage." ' "  *Hayslip v. Hanshaw,* 2016-Ohio-3339, 54 N.E.3d 1272 at ¶ 13 (4th Dist.), quoting *Holland v. Gas Ents. Co.,* 4th Dist. Washington No. 14CA35, 2015-Ohio-2527, at ¶ 14, quoting *Ohio Neighborhood Finance, Inc. v. Scott*, 139 Ohio

St.3d 536, 2014-Ohio-2440, 13 N.E.3d 1115, ¶ 22, citing R.C. 1.42. "We apply the statute as written * * *, and we refrain from adding or deleting words when the statute's meaning is clear and unambiguous." *Risner v. Ohio Dept. of Natural Resources,* 144 Ohio St. 3d 278, 2015-Ohio-3731, 42 N.E.3d 718, at ¶ 12. Furthermore, " ' "[t]he interpretation of statutes and administrative rules should follow the principle that neither is to be construed in any way other than as the words demand." ' " *Saber, supra,* at ¶ 21, quoting *State ex rel. Baroni v. Colletti,* 130 Ohio St.3d 208, 2011-Ohio-5351, 957 N.E.2d 13, ¶ 18, quoting *Morning View Care Ctr.-Fulton v. Ohio Dept. of Human Servs.,*148 Ohio App.3d 518, 2002-Ohio-2878, 774 N.E.2d 300, ¶ 36 (10th Dist.). "If the statutory language is plain, we must enforce it according to its terms." *Hayslip, supra,* at ¶ 18; *King v. Burwell,*135 S.Ct. 2480, 2489, 576 U.S. 473, (2015); *Risner, supra*, at ¶ 12.

{¶51} By the unambiguous language of the statute, it is clearly mandatory that notices are to be sent to both the affected parties and their attorneys or other representatives of record. However, there is simply no support for Appellant's contention that the plain language of R.C. 119.09 requires that the notices be mailed simultaneously. The language simply states: "A copy of such order shall be mailed to the attorneys or other representatives of record representing the party." There is no further

mandate. While it may be preferable that the notices be sent at the same time, Appellant has provided no authority for this contention and our research has found no authority to support Appellant's argument. *See e.g. Calo v. Ohio Real Estate Comm.,* 10th Dist. Franklin No. 10AP-595, 2011-Ohio-2413, at ¶ 19. *See also, Diversified Benefit Plans Agency, Inc. v. Duryee,* 101 Ohio App. 3d 495, 500, 655 N.E.2d 1353 (9th Dist. 1995).

{¶52} We find the trial court did not abuse its discretion by rejecting Appellant's argument that the Department's order was not issued in accordance with R.C. 119.09 due to the failure to mail the notices to Appellant and his attorneys simultaneously.

d. The failure to issue Findings of Fact and Conclusions of Law in accordance with R.C. 119.09.

{¶53} Appellant asserts that the hearing officer provided no independent findings of fact and merely reiterated the allegations contained in the Notice for Opportunity for Hearing issued on May 14, 2019. Appellant argues that without true findings of fact, the hearing officer's conclusions of law are inappropriate. Appellant argues the report does not indicate what evidence was presented to support the hearing officer's findings of fact. Appellant concludes that the hearing officer's failure to explain the findings of fact and conclusions of law prejudiced him because he cannot properly point out the errors of the process as these issues are

hidden due to the deficient report. Furthermore, the common pleas court abused its discretion by finding that the report was in accordance with the law, given there were only two facts adduced at the hearing that led to the decision to revoke Appellant's license.

{¶54} In this case, the hearing officer clearly found Appellant admitted to impersonating a client over the phone. The hearing officer also clearly found it proven through testimony that Appellant should have known he submitted a forged signature on his own disability claim. We have discussed the issue of the forgery above. While Appellant denied forging Murphy's name and denied knowledge of the forgery altogether, Carrie Roe presented evidence to the contrary. The hearing officer was charged with resolving those evidentiary conflicts. The common pleas court and this Court must accord her findings with due deference.

{¶55} The common pleas court found that "while the hearing officer's conclusions were contrary to those sought by Appellant, they were based on the evidence presented at the administrative hearing * * * and the conclusions reached were reasonable based on that evidence presented." We agree. Upon review of the evidence presented at the administrative hearing, Appellant's argument that the hearing officer's findings of fact and conclusions of law are not supported by the evidence is not persuasive.

{¶56} Based on our review of the record, we find the common pleas court did not abuse its discretion in finding that the Department's order was in accordance with the law.  Accordingly, we find no merit to the second assignment of error and it is hereby overruled.

{¶57} Having found no merit to either of Appellant's assignments of error, the judgment of the common pleas court is hereby affirmed.

**JUDGMENT AFFIRMED.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

For the Court,

_____
Jason P. Smith, Presiding Judge


_____
Peter B. Abele, Judge


_____
Kristy S. Wilkin, Judge


**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**